### C. C. BIGHAM v. THE STATE.

*No. 48. Decided November 5.*

1. **Burglary—Indictment.**—In an indictment for burglary it is not necessary to allege, in specific terms, that "a house" was burglarized.

2. **Same—Pleading—Indictment, Sufficiency of.**—It is expressly declared by statute (Code of Criminal Procedure, article 4280), that words used in a statute to define an offense need not be strictly pursued in an indictment. It is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words.

3. **"House"—Sheriff's Office.**—Where an indictment for burglary charged that the defendant " did break and enter into the sheriff's office, and did then and there by force and fraud break and enter a certain vault situated in said office." etc., and the objection to the indictment was that it did not charge that *a house* was burglarized, *held*, under our statute. Penal Code, article 709, which defines a house to be *any building or structure erected for public or private use,* that an " office" is a house, and a vault is a cellar of a house, and that the indictment sufficiently charged the burglary of a house.

4. **Same—Burglary Indictment—Allegation of Intent.**—Where an indictment for burglary also charges theft of specific articles after the entry, it is not necessary to set forth the essential terms of theft in charging the intent. Following Williams v. The State, 24 Texas Court of Appeals, 69.

APPEAL from the District Court of Young.   Tried below before Hon. GEORGE E. MILLER.

This appeal is from a judgment of conviction for burglary, wherein the punishment was assessed at three years in the penitentiary.  The charging part of the indictment is as follows:   "That Charles C. Bigham, on or about the third day of September, 1890, did then and there, unlawfully, and in the daytime, in the county and State aforesaid, by force and fraud, break and enter the sheriff's office, in said county of Young, State of Texas, and did then and there, by force and fraud, enter a certain vault situated in said sheriff's office, then and there occupied by and in the possession of and under the control of T. B. Collier, sheriff of said county, with the intent of the said Charles C. Bigham then and there to commit theft; and the said Charles C. Bigham did then and there, on the day and date last aforesaid, and in the manner and form as stated, fraudulently take from the possession of T. B. Collier (7) seven dollars, lawful money of the United States of America, and of the value of (7) seven dollars, the same being then and there within said vault, and in said office as aforesaid, and the same being then and there the corporeal personal property of the said T. B. Collier, without the consent of T. B. Collier, and with the intent of the said Charles C. Bigham to deprive the said T. B. Collier of the value thereof, and with the intent to appropriate the same to the use and benefit of him, the said Charles C. Bigham, against the peace and dignity of the State."

M. A. Wallace, for the State, testified, in substance:   That on the 3rd of September, 1890, he was a deputy under T. B. Collier, sheriff of Young County, Texas.   That they had been missing money out of the vault in the sheriff's office in the court house of Young County.   That Collier marked some money, showed it to witness, and placed it in the vault, and told witness to watch and try to find out who was taking the money. Saw the money several times in the vault the day before it was taken out, which was the 3rd day of September, 1890.   It had then been in there several days.   About 10 o'clock that morning witness and John Y. Leavell went in and looked at it.   Leavell left the town of Graham that morning. Afterward, about 12 o'clock, after Leavell left, witness again went to the vault and saw the money there.   He then shut the vault door, but did not turn on the combination, leaving it so that by turning it back a certain way it could be opened.   Also shut the sheriff's office door, but did not lock it, and went to dinner.   Came back between 12 and 1 o'clock and found that the money had been taken out of the vault.   The money taken was a $5 bill, No. 3248, issued by the Albany Bank of Texas, with an ink stain on the bosom of the man on the bill, which made a mark like a breastpin in the bosom, and which mark was on the bill when Sheriff Collier, Leavell, and witness saw it, and it was placed there by Leavell to identify same.   Also two silver dollars, one of which was cut and

marked across the neck of the woman on the dollar, and by cutting a cross under the neck of the eagle. The other was marked by two cuts in the letters around the dollar piece. Also a cut in the letter O. After missing the money from the vault witness went out to find where it went. At that time Charles C. Bigham had his law office in the court house. Pretty soon saw him coming up from toward his house. Asked him if he would treat. He said that he did not have any money. Witness watched him, keeping him in sight, and pretty soon saw him go into John E. Morrison's grocery store, and saw him pass over a bill, either to Mr. Homer Mayes or one of the clerks in charge of the business, and saw the clerk put the bill down into the cash drawer. Witness went in; saw John E. Morrison; told him what had happened, described the money, and asked Morrison to let him see it. Morrison took out the bill, and witness identified it as the same one left in the vault in Sheriff Collier's office that morning. Witness then arrested Charles C. Bigham, and placing him in charge of Joe Akins, went down to defendant's house to search for the silver coin, and there found two dollars, which he identified also as the money left in the vault. (Here witness produced the two silver dollars, and also the $5 bill, in open court. Exhibited the same to the jury, explaining the marks by which he knew them, and stated that the same was the money recovered by him on the 3rd of September, 1890.) That T. B. Collier also recognized the money, and told the defendant. That Collier is dead. That defendant went before a justice of the peace, waived an examination, and gave bond for his appearance before the District Court to answer to said charge. Witness stated that the money was the property of T. B. Collier, and was of the value of $7.

On cross-examination, the witness stated that he (witness) had been convicted in the United States Court, and sentenced to ten years imprisonment, but that his case was pending on appeal in the United States Supreme Court. He also stated that several other persons officed in the court house at the time the money was taken.

John Y. Leavell, second witness for the State, testified substantially the same as did the previous witness, Wallace, and stated no material additional fact.

John E. Morrison, witness for the State, testified: That on the 3rd of September, 1890, he was doing business in the town of Graham. That Homer Mayes had control of one of the departments of his business house. That on the afternoon of that day deputy sheriff M. A. Wallace came into his business house and told him that he had seen Charles C. Bigham let Mayes have a $5 bill, which he (Wallace) described by its number and private marks, not now remembered, and asked that the same be turned over to him. He pointed out the till in which it had been placed, and I found the bill—the only one in there, as I now remember. It was marked exactly as he had told me. I turned it over to him, and have not seen it

since. (Here the witness was shown the $5 bill, and says that it looks like the same, but can not say it is the same. That he does not remember the number or the private marks it bore.)

Homer Mayes testified: That on September 3, 1890, he was working in the dry goods store of John E. Morrison. That the defendant, Charles C. Bigham, came in and passed a $5 bill, which witness placed in the cash drawer. Shortly afterward John E. Morrison and Marion Wallace came in, and Wallace described the bill, and Morrison took it out and turned it over to him. That the bill was exactly as described by Wallace, before we gave it to him. He told us that it was a $5 bill, and the number it bore, which we found to be true. Witness can not identify the bill in court as the same; it has been so long ago that he does not remember the number nor the marks on the bill.

S. R. Jeffrey, being sworn, testified: I saw the $5 bill which was placed in T. B. Collier's vault. Collier said he was trying to find out who was taking money out of his vault. The $5 bill that Wallace got at John E. Morrison's on the 3rd of September was the same bill that I saw in Collier's vault. I saw it that day and identified it as the same. (Witness is here shown the $5 bill in court, which he says is not the same; that he can not find the hole which he punched in it.) Knows nothing about the silver. I know the bill in court is not the one I punched the hole in.

Charles C. Bigham, defendant, after being sworn, testified as follows: My name is Charles C. Bigham. On September 3, 1890, I lived in Graham, Young County, Texas. I never got any money at any time out of Sheriff T. B. Collier's vault in his office. I got some money about that time from a cousin, who lives at Van Horn, Texas, and in the lot a $5 bill. There was $25 he sent me. I made some change with some persons that day around town, but don't remember who now; besides, I got some money a short while before that. I never got the money I am charged with.

Cross-examined: I got the money through the mail by a letter. It was money. It was not registered to me. It was currency. I did not get any money through the bank. I did not get the money by T. B. Collier's consent, nor any other person's. I passed the $5 bill to Homer Mayes at John E. Morrison's that day. M. A. Wallace arrested me. I did not get the two dollars in silver. I don't know how they came to be at my house, and don't know that they were even there. I was arrested on the charge of burglary that day, and went before the justice of the peace and waived an examining trial, and gave bond for my appearance before the District Court of Young County, Texas, to answer to the charge of burglary. I was in Graham all the day of September 3, A. D. 1890, until I was arrested. Tom Collier never gave me his consent to take anything from the vault in the sheriff's office.

The defense then introduced Mr. M. A. Wallace, who said: I am the same Wallace referred to in your plea before the court, and convicted as charged therein.

Cross-examined by the State: I have appealed that case to the United States Supreme Court, and it is now before that court. The $5 bill in court is the same one that S. R. Jeffrey identified the day I arrested the defendant, September 3, 1890.

The defense then offered the certified copy of the judgment of conviction of M. A. Wallace in the Federal Court, which is agreed as a fact without including the same in this statement.

*Arnold & Adams* and *C. W. Johnson*, for appellant.—The possession and control of the office and vault having been alleged to be in Collier, and the evidence showing such possession and control to be in Marion Wallace, creates a fatal variance between the allegation and proof as to the possession and control of the property at the time of the burglary and theft. Williams v. The State, 26 Texas Ct. App., 133; Tinney v. The State, 24 Texas Ct. App., 112; Alexander v. The State, 24 Texas Ct. App., 126; Blackburn v. The State, 44 Texas, 460.

The averments of an indictment must be as specific as the language of the statute on which it is founded. Banks v. The State, 28 Texas, 644; Muldrew v. The State, 12 Texas Ct. App., 617.

The indictment should, as a general rule, follow and conform to the statute denouncing the offense; and where other words are used by the pleader as a substitute for those used in the statute, such substituted words must be equivalent to the statutory words, or be of a more comprehensive and extensive signification. The indictment against appellant substitutes the words sheriff's office and vault for the statutory word house, neither of which substitutes are equivalent to or embrace a more comprehensive and extensive significance than the statutory word house. Lantznester v. The State, 19 Texas Ct. App., 320; The State v. Wupperman, 13 Texas, 33; Kerry v. The State, 17 Texas Ct. App., 185; Tynes v. The State, 17 Texas Ct. App., 123; Lagrone v. The State, 12 Texas Ct. App., 426; Longenotti v. The State, 22 Texas Ct. App., 62.

An indictment at common law for burglary must charge the term dwelling house or mansion house, and a charge that the breaking was into a house without using the word dwelling or mansion was insufficient. 1 Russ. on Crimes, 8 ed., 810, 826; Whart. Crim. Law, 2 ed., 526; 3 Chit. Crim. Law, 2 ed., 1109; Rex v. Hawkins, 2 East P. C., 501; Rex v. Maynard, 2 East P. C., 501; 1 Hale, 550; 9 Hale, 556.

Burglary at common law is defined by Mr. Russell, in his work on Crimes, to be the breaking and entering the mansion house of another in the night, with intent to commit some felony within the same, whether such felonious intent be executed or not. Under our Penal Code, this offense

is defined as the entering a house by force. threats, or fraud, at night, or in like manner by entering a house during the day, and remaining concealed therein until night, with the intent in either case of committing felony or the crime of theft. He is also guilty of burglary who, with intent to commit a felony or theft, by breaking, enters a house in the daytime. We respectfully submit, as an indictment at common law was required to use the words mansion or dwelling house in charging burglary under a definition very similar to the one given in our code, it follows as a necessary. conclusion that the term mansion or dwelling house, at common law, was a technical word, and is in such sense used in our code, and is necessary to the validity of the indictment against appellant.

We respectfully submit that this cause should be reversed and dismissed.

*Richard H. Harrison,* Assistant Attorney-General, for the State.—The indictment is sufficient. Penal Code, art. 709; Willson's Crim. Stats., sec. 1227; Anderson v. The State, 17 Texas Ct. App., 305.

The allegations in the indictment with regard to theft are sufficient, the allegation being that a theft was actually committed. Penal Code, art. 704; Williams v. The State, 24 Texas Ct. App., 69.

SIMKINS, Judge.—Defendant was indicted for burglary with intent to commit theft, and sentenced to three years in the penitentiary, from which he appeals.

The defendant moves in arrest of judgment on the ground that the indictment charges no offense known to the laws of Texas. The indictment charges that the defendant did break and enter into the sheriff's office, with force and fraud, and did then and there, by force and fraud, break and enter a certain vault, situated in said sheriff's office, then in the possession and control of the said sheriff, etc. The specific objection was that the indictment did not charge that a house was burglarized. Is this indictment fatally defective in not using the precise words of the statute, and alleging the sheriff's office was a " house?" It is declared by the code that words used in a statute to define an offense need not be strictly pursued in an indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words. Code Crim. Proc., art. 428a; Willson's Crim. Stats., secs. 1984, 1955.

An " office," as defined by Webster, is " a house or apartment in which public officers and others transact business; as, a register's office, a lawyer's office." A " vault," by the same authority, is " a cellar." The indictment alleges the breaking and entry into the sheriff's office, and also into the vault situated in said office. The statutory definition of a " house "

is, "any building or structure erected for public or private use." Penal Code, art. 709.

In the Anderson case, 17 Texas Court of Appeals, 305, this court has held that the corner of a store, picketed off as an office, where the books and accounts of the firm were kept, is a house within the statutory definition; and so is an apartment in which public officers transact business. We think the place described in the indictment as being burglarized was necessarily a "house" as defined in the code. A familiar illustration of this rule of construction arises under the statute punishing the "theft of cattle." An indictment alleging the theft of a steer was declared by Bell, judge, to be sufficient, without the further allegation of the same being cattle (Lange's case, 22 Texas, 591), and this decision has always been followed. Willson's Crim. Stats., sec. 1316. And so in other States. Thus, in Missouri, under a statute defining "burglary" to be the "breaking of any shop, store, booth, tent, warehouse, or other building," the indictment alleged the defendant did break and enter "the depot" of a certain railway company. Held, it could be sustained, as the depot was either "a warehouse" or "other building." The State v. Edwards (Mo. Sup.), 19 S. W. Rep., 91. Again, in Ohio, under a statute defining "forgery" to be the "making of a false bill of exchange or other contracts for the payment of money," an indictment for forging "an endorsement on a promissory note" was objected to for insufficiency in not describing the offense in the precise words of the statute. The court says the precise words are not always indispensable. The offense should be set out with clearness and certainty, and be so described as to bring it within the statute. Poage v. The State, 3 Ohio St., 234; Kennedy v. The State, 34 Ohio St., 310; United States v. Bachelder, 2 Gall., 15.

Tested by the rules stated, we think the indictment sufficiently charges the offense of burglary in charging the entry into the sheriff's office and into a vault in said office.

Defendant further shows cause in support of his motion to arrest the judgment, that the indictment fails to set out the essential elements of theft, but simply alleges the breaking was done "with intent to commit theft." It has been held by this court, that where the indictment for burglary also charges theft of specific articles, it is not necessary to set forth the essential terms of theft in charging the intent. This has been directly decided in this State. Williams' case, 24 Texas Ct. App., 69; Commonwealth v. Brown, 3 Rawle, 207.

We find no error in the charge of the court, and the verdict is fully supported by the evidence, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.