### TOM BAILEY v. THE STATE.

#### No. 1749. Decided January 25, 1899.

**1. Murder—Evidence—Unwarned Statements of Defendant in Arrest—Construction of Statute.**

Our statute, Code of Criminal Procedure, article 790, prohibiting the use of the confession of a defendant in arrest where he has been unwarned or uncautioned, is not limited to the rigid construction of a technical "confession," but was intended to protect a defendant while in jail and to prevent the State going into the jail and proving inculpatory or criminating facts against defendant by his unwarned declarations and statements.

**2. Same—Impeachment of Defendant as a Witness.**

On a trial for murder, where defendant had testified as a witness to facts and cir-

cumstances connected with the killing making out a case of self-defense, it was incompetent for the State to contradict him by proving that he had, while in arrest and without being warned or cautioned, told the witness that he knew nothing about the killing, and did not remember of being at the time and place of the killing at all.

APPEAL from the District Court of Panola. Tried below before Hon. W. J. GRAHAM.

Appeal from a conviction for murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The indictment charged appellant with the murder of A. D. Bane, on the 25th day of October, 1898, by shooting him with a pistol.

On the morning of, and some time before the homicide, the parties, defendant and Dr. A. D. Bane, deceased, and others, were in Hampton's store, in the village of Fairplay, and were drinking out of defendant's bottle of whisky. Defendant asked Bane about a remark he had heard the latter had made to the effect that some one would be killed in the village before Christmas. This Bane denied, but stated, if defendant's father had said he made such remark, then he must have done so. The parties were all laughing and talking and apparently friendly. Defendant offered to give one Abernathy $5 if he would whip Bane, which Abernathy declined to do. Several of the parties soon left and went to the gin of Browning & Bailey, a few hundred yards away, and Bane and defendant also left. About an hour afterwards defendant came back to the store and inquired for Dr. Bane, and bought five 38 caliber pistol cartridges and rode off. At about 11 o'clock a. m. Dr. Bane was at the gin talking to Browning, one of the proprietors, when defendant came. He rode into the lot, and dismounting, approached Bane, and was heard to say to him, "You are a d———d son-of-a-bitch." Bane walked over to him, and putting his left hand on his shoulder, said, "Tom, you ought not to call me that. Take it back; take it back." Defendant put his left hand into his hip pocket, pulled out his pistol, and carrying it around behind him under his overcoat into his right hand threw it suddenly in front of him and shot Bane. Bane said, "Tom, I did not think you would do me that way." Bane had his pistol out by this time and was trying to cock it, and was pointing it at defendant, who ran behind the house. Bane then put his pistol in his pants waistband and was taken by two friends to his house, a short distance away, where he died from the effect of the wound he had received from defendant's pistol shot. Defendant left immediately after the shooting, and late that evening was arrested by Sheriff Appling in bed and asleep at the house of Alva Browning, about two or three miles from the place of the shooting.

Deputy Sheriff Appling testified, in substance, that when he awoke defendant and arrested him for the killing, defendant said, "he did not know anything about it at all." Defendant further said he did not remember being at the gin at all, but had a faint recollection of being at the store, but remembered nothing else. "Defendant was under arrest

at the time of making this statement to me, and had not been warned. I was deputy sheriff."

Defendant testified in his own behalf. His testimony, in substance, was to the effect that while at Hampton's store, in the morning before the shooting, he told Dr. Bane that he would go home and get some brandy and give him some of it. That he went home, could not get the brandy, came back to the store, and inquired for Bane to tell him that he did not get it. Not getting any information at the store as to the whereabouts of Bane, he got some 38 caliber pistol cartridges and loaded his pistol. Did not have any particular object in view in loading the pistol—"wanted it loaded." He also got a bottle of "wild cherry" at the store and went directly to the ginhouse. He says: "I rode in the lot, and the first thing I said to Dr. Bane was, 'Doctor, I did not get the brandy, but have got some bitters.' Dr. Bane replied, 'You are a damned son of a gun.' I replied: 'If I am a damn son of a gun, you are a damn son of a bitch.' Bane then rushed at me saying, 'Take it back; take it back; take it back.' This was all that was said between us at all. I did not say anything to him after he commenced to ask me to take it back. He had his hand on his pistol, pulling at it. Put his hand on my shoulder and I stood perfectly still, looking him in the eye. I pulled my pistol out of my left hip pocket with my left hand, passed it under my overcoat into my right hand, and shot him. I shot him because every second I believed would be my last,—that he, Bane, was going to shoot me. All the time he was saying 'Take it back' he was tapping me on the shoulder with his left hand, and he had his right hand on his pistol. His pistol seemed to be hung some way. I believed he was going to shoot me, and I shot him to keep him from shooting me. I got on my horse and left. Was arrested between sundown and dark at Alva Browning's house. When arrested was asleep on a bed."

Defendant testified that he did not remember telling Deputy Sheriff Appling what that officer testified (as above set out), after he was arrested.

The above is a concise statement of the salient features of the evidence, which is quite voluminous. Defendant objected to the testimony of Deputy Sheriff Appling, because, if he made any such statements, he was in arrest at the time and had not been warned.

H. N. Nelson and N. B. Morris, for appellant.

Mann Trice, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of ten years, and he prosecutes this appeal.

Appellant reserved an exception to the examination of himself while on the witness stand as to certain statements made by him while in jail, under arrest, without having been warned; that is, the State was per-

mitted to ask him if he did not state to John Appling, a deputy sheriff, after his arrest, that he remembered nothing about the difficulty, as to how it occurred, etc. Over the objections of appellant, he answered that he did not remember having made the statement. Defendant objected to this testimony on the ground that it was a statement or declaration made by defendant while he was in jail, without due caution. The State then introduced the witness John Appling, and proved by him, over appellant's objection, that, after he had arrested defendant, defendant told him he knew nothing about the killing of Bane, and did not remember being at the gin at all, etc. The witness in this connection stated that he had not warned appellant. This testimony was likewise objected to, on the ground that it was incompetent for the State to go into the jail, and lay a predicate by defendant, he not having been warned, and then contradict him by other evidence.

The court seems to have admitted this testimony on the ground that this was not a confession, and so did not come within the rule laid down in Morales v. State, 36 Texas Criminal Reports, 234. This case, which has been subsequently followed by this court, lays down the doctrine that it is incompetent to lay a predicate as to confessions of guilt made by defendant in jail, in order to contradict him by another witness. In that case the predicate laid was a direct confession on the part of defendant of his guilt of the crime charged. This he denied, and the State was permitted to contradict him by evidence of another witness to the effect that he did while in jail make the alleged statement confessing his guilt to him. This testimony was limited by the court to the purpose of contradiction. While a rigid construction of the statute might confine the testimony strictly to technical confessions of guilt, yet we believe the terms of said statute have a broader signification, and that it was intended to protect a defendant while in jail, and to prevent the State going into the jail, and proving inculpatory or criminative facts against defendant by declarations or statements, he not having been warned, as the statute requires. This seems to be the construction as held in Fulcher v. State, 28 Texas Criminal Appeals, 465. In that case the State proved against defendant, over his objection (not having been warned), that after his arrest he seemed agitated, and turned pale. The court said upon this point: "Where the confessions of a defendant under arrest are inadmissible against him, because made while he was uncautioned, his acts, if tantamount to such a confession and done under similar circumstances, are likewise inadmissible." Of course, it would be conceded that, if appellant had told the deputy sheriff how the killing happened, his testimony under such circumstances would be inadmissible against him as original testimony to show how the killing was done; and we hold that it would be equally inadmissible for the State to introduce a confession of a defendant showing that the crime was committed in a certain way, and then in order to contradict him, to prove that it was done some other way, and thus, having laid the predicate, contradict him by showing that it was done some other way. In

this particular case the witness stated that he had no recollection of the homicide, and how it was done. Ordinarily, it would be immaterial; but the defendant testified here, and told circumstantially how the homicide occurred; and his evidence made out a case of self-defense. Now, to contradict him as to this matter, the court permitted the State to prove by a witness that while defendant was under arrest, and not having been cautioned, he told said witness that he did not know how the homicide occurred, and had no recollection of it. This contradiction of appellant was exceedingly hurtful to him, and we hold that it was not admissible to contradict him by this character of evidence. In our opinion, the statute relating to confessions is not confined strictly to a technical confession, but covers any fact or circumstance involved in the statement of a defendant made while in jail or under arrest, and not having been cautioned, which may be used by the State as criminative or inculpatory against him. The case in every other respect was admirably tried, and we find no other error in the proceedings, except as above discussed. For the error of the court in admitting said testimony as presented in defendant's bill of exceptions, the judgment is reversed and the cause remanded.

*Reversed and remanded.*