Tom Rogers v. The State.

No. 2638. Decided December 12, 1902.

1.—Murder—Evidence—Confession.

On a trial for murder, statements made by defendant while in arrest and after he had been duly warned, are not inadmissible because not in terms a confession. Any statement made under such circumstances, which may be shown to be an inculpatory or incriminative fact, may be introduced in evidence.

2.—Same—Confession—Submission of to Jury.

On a trial for murder, if there be a question as to whether the statement or confession of defendant was freely and voluntarily made, the court should submit that question to the jury to be determined by them.

3.—Defendant as Witness—Cross-Examination.

Where defendant was a witness on his trial for murder, it was competent on his cross-examination to ask him his reasons for denying and concealing the alleged offense, but it was incompetent to show that he was requested to go before the grand jury and testify to the matter, and that he declined to do so.

4.—Murder of White Man by Negro—Reputation of Deceased.

On the trial of a negro for the murder of a white man, where the murder occurred over a gambling transaction between the parties, it was competent to prove that deceased had the reputation, in the community in which he lived, of gambling with negroes. The evidence was corroborative of the testimony of defendant and was a circumstance tending to shed light on the transaction.

5.—Same—Defendant as a Witness—Cross-Examination.

On a trial for murder, where defendant, as a witness in his own behalf, did not testify as to his failure to tell Mr. McKellar about the killing, he can not be asked, on cross-examination, why he did not tell him.

6.—Murder in the First Degree—Evidence of Express Malice Insufficient.

See opinion for facts which the court hold are insufficient to establish express malice and murder in the first degree.

Appeal from the District Court of Kaufman. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant with the murder of J. W. See, on the 9th day of September, 1902, by cutting him with a razor, a deadly weapon.

The following statement, taken from appellant's brief, is correct: Defendant and deceased were entire strangers at the time deceased approached defendant on the platform at Forney and invited defendant to a game of "five-up." Defendant had gone to Forney to meet a woman at the train and to get some market. Defendant had no trunk or grip of any kind, and left his razor in his coat pocket. During the week he did not wear the coat, but on Sunday morning he put it on and the razor was in the pocket. Defendant left with the intention of returning in the forenoon. Deceased sought the defendant and asked for a game. An hour after the homicide the defendant met his partner, Neal Chandler, and told him (Neal) how the homicide occurred.

The State introduced Neal Chandler and proved up the statement of the defendant, as follows: That deceased and defendant were playing five-up; that they stood four and four, and that defendant was dealing the cards and turned a jack, and deceased accused defendant of turning the jack from the bottom and of cheating, and demanded that the game be played over or defendant give all the money back; and that deceased made a move toward his pocket as if to draw a weapon, calling defendant a damn black son of a bitch, and that defendant grabbed his razor and cut deceased, and that deceased turned away, saying, "It is your money; you won it; take it." Defendant got up; got his coat, his market and his onions and went the other way, and heard nothing more of the deceased. This confession, in strict confidence, the defendant did not believe Neal Chandler would divulge, or that it would be found out. Neal Chandler went over to Forney in the evening, saw the crowd of angry people and returned somewhat nervous. The conversations between defendant and Neal Chandler at intervals during the evening related to defendant's being able to get out of the country unnoticed. Immediately after Neal and Tom were arrested by the man with a pistol, Neal told the officers about Tom's confession just as he related it on the witness stand. This statement was made by Neal without Tom's knowledge. Neal's account of defendant's confession, on the stand, and his statement to the officers, being the same, was not denied by the officers, although upon the witness stand. Defendant took the stand and testified in his own behalf in detail as to the homicide. That he pulled his coat off, folded the inside out, and placed it on the ground for them to play on, the collar toward defendant and the tail toward deceased, with the handle of the razor sticking out of the inside pocket about an inch; that deceased was sitting on his knees with his feet back under him; that defendant was sitting down with his feet on either side of his coat; that when deceased accused defendant of cheating he (defendant) drew one foot back under ,him and that he

told deceased to take the money then on the ground and let's quit; that when deceased called defendant a damn black son of a bitch, deceased raised up hurriedly to a position of being on one knee and one foot, and moving his right hand to his pocket and his left to the waistband of his pants; that defendant was still sitting down with one foot extended alongside of his coat and deceased in the position just stated, making the movements stated, when defendant grabbed his razor and cut deceased; that defendant struck only one lick with the razor.

The wound on deceased was made with one lick. The wound was from the back of the neck to near the center of the front of the throat, not severing the jugular entirely. The only blood found on the defendant was on the toe of one shoe, the foot that was extended alongside the coat. The deceased was very bloody and there were no evidences of a struggle on the ground. Defendant testified that deceased had a bottle of whisky and drank some while they were playing the game. An empty whisky bottle was found on same side of place where game was played that the blood and deceased's hat and cards and money were on. Deceased had a bottle of whisky while he was out in the road with defendant in the morning.

The State claimed that defendant killed deceased for picking up the 50-cent piece. The piece of money was found on the ground with deceased's hat, cards and empty whisky bottle. Defendant did pick up his onions and market and carry them off, and also took with him his bloody razor, and left the money on the ground.

*C. W. Broadfoot, Henry Yarrell,* and *J. S. Terry,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

Appellant assigns a number of errors, but in the view we take of the case it is not necessary to discuss any of them at length. Appellant objected to certain statements alleged to have been made by him to Sheriff Henderson the night of his arrest, and shortly after that event. It appears that the sheriff immediately on his approach to the prisoner, who had been arrested by a deputy a few minutes before, said to him: "Where is that razor? I warn you that any statement made by you will be used against you on the trial. Where is that razor?" In response thereto defendant said, "I have not got any razor." Subsequent to this, after the razor was found near where defendant was arrested, appellant being then in the calaboose, and about an hour after the conversation the sheriff showed appellant a razor, and asked defendant if it belonged to him. Defendant replied that it did not. The sheriff then told appellant that he had better tell the truth about killing that man, and defendant replied that he knew nothing about the killing.

Defendant objected to all of this testimony on the ground that appellant's statement in connection with his conduct was a mere declination to make any statement, and because said statement, though given under the warning, was made under pressure and excitement and was merely a negative statement made under the apprehension of danger from mob violence, the defendant having been advised by Chandler and others that the woods near Forney were full of angry people. And furthermore, because it was apparent, from the manner in which said questions were asked, that it was the purpose of the sheriff to force defendant to make a statement. All of these objections were overruled. Under the rule laid down in Grimsinger v. State, ante, p. 1, 5 Texas Ct. Rep., 628, in the opinion of the writer the testimony was admissible. The fact that it was not in terms a confession would not render it inadmissible; the rule being, that any statement made that may be shown to be an inculpatory or incriminative fact may be introduced in evidence. Bailey v. State, 40 Texas Crim. Rep., 150. Inasmuch as there is some question in regard to the free and voluntary character of the confession, should the facts be the same on another trial, it is suggested that the issue as to whether or not the statement of appellant was free and voluntary, after such warning, should be submitted to the jury. We think it was competent, in the cross-examination of appellant, to ask him with reference to his denials as to the killing, and also as to his reason for such denials; and also as to his reason for concealing the alleged offense. But we do not think it was permissible to show that appellant was requested to go before the grand jury and testify in regard to the matter, and that he declined to do so. Appellant had a right to go before the grand jury if he desired, but the fact that he did not go could not be used as evidence against him. Weaver v. State, 43 Texas Crim. Rep., 340, 3 Texas Ct. Rep., 639.

We believe that it was competent, under the circumstances of this case, to prove by the witnesses, as was attempted, the reputation of deceased in the community in which he lived, as being a man that gambled with negroes. The theory of the State was that appellant claimed to have won the money, some 60 cents, and that deceased took it from him, or would not permit him to take it, and that appellant formed the intent to kill deceased of his malice on that account. Appellant testified that he and deceased were playing a game of cards, and he won the money, and deceased charged him with swindling him by turning the cards from the bottom, and claimed the stakes, and wanted appellant to give him all the money that he had won from him, besides the stakes then up. This appellant refused, when deceased cursed him and made a demonstration as if to draw a weapon on him. Appellant also testified that he went into the game with deceased on his urgent invitation and insistence. As corroborating appellant in this respect, showing how the game began, we believe the testimony was competent. White men do not ordinarily play cards with negroes, and the fact that

deceased was in the habit of playing cards with negroes was a circumstance tending to shed light on how the game came to be played which led up to the homicide.

We do not believe it was competent for the State, in cross-examination, to ask appellant and require him to state why he did not tell McKellar about the killing. We do not understand appellant to have brought out this evidence to the effect that he did not tell McKellar.

It is also insisted that the facts proven fail to show express malice. We have carefully examined the record in that respect, and we agree with that contention. The State introduced and relied on the confession of appellant, and this, together with appellant's own evidence, which corroborates and accords with that confession, was the only testimony showing the circumstances attending the homicide. And these, to our minds, show a killing on a sudden quarrel, without any previous grudge. There does not appear to have been any antecedent preparation; the homicide being committed with a razor, which was in the coat pocket of appellant immediately in front of him, and he seized this and used it, according to his own testimony, to prevent deceased from attacking him. Nor does the mode of committing the homicide, as shown by the testimony, evidence that malignant disposition indicating express malice; but one blow was inflicted, and although that was a severe one, upon a vital part of deceased, it does not of itself show a malignant and cruel disposition. In the absence of evidence of the indicia showing express malice, which must be proved in order to sustain the conviction of murder in the first degree, the killing, if unlawful, would be no more than murder in the second degree; and looking at the facts as they appear to us, we do not believe they will sustain a conviction for more than that.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*