B. F. WATSON v. THE STATE.

No. 1957. Decided May 9, 1900.

**1. Local Option—License to Sell on Prescription—Information.**

Under provisions of article 5060a, Revised Statutes, as amended by Acts of the Twenty-fifth Legislature, pages 223, 224, it is a sine qua non to a right to sell intoxicating liquors in a local option territory that the seller should first pay the occupation tax and obtain a license to sell on the prescription of a physician. The law prohibits the sale of intoxicants in a local option territory in any manner whatever, whether on prescription or without prescription, until a license to sell on prescription has been obtained. An information seeking to charge said offense is not sufficient, which does not allege that defendant engaged in selling intoxicating liquors in a local option territory without first obtaining a license to sell on prescription of a physician, and which also fails to negative the exception as to druggists selling drug compounds as provided in said amendatory statute. Henderson, Judge, dissenting.

**2. Same.**

Under our statute one quart or less is the limit as to the quantity of intoxicating liquors allowed to be sold upon the prescription of a physician in a local option territory, and in no event can the prescription justify the sale in quantities in excess of one quart.

Appeal from the County Court of Hamilton. Tried below before Hon. C. W. Cotton, County Judge.

Appeal from a conviction of selling intoxicating liquor in a local option territory without first having obtained a license; penalty, a fine of $300.

No statement necessary.

*Eidson & Eidson,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of engaging in the sale of intoxicating liquors in a subdivision of Hamilton County without first having obtained a license for that purpose under Acts 25th Legislature, pages 223, 224. This information is the same as that in the Snearly case, 40 Texas Criminal Reports, 507, and also as that passed upon in Williamson v. State, 41 Texas Criminal Reports, 661. The section in question provides: "And there shall be collected from every person, firm, corporation or association of persons, for every separate establishment selling such liquors and medicated bitters within this State; within a county, subdivision of a county, justice precinct, town or city in which local option is in force under the laws, the sum of $200; provided the same shall not be sold in such localities except upon prescription and in compliance with the laws governing the sale in such localities; provided further, that nothing in this article shall be so construed as to exempt druggists who sell spirituous, vinous, or malt liquors, or medicated bitters capable of producing intoxication, on the prescription of a physician or otherwise, in either localities as above set forth, from the payment of the tax herein imposed: provided further, that this article shall not apply to the sale by druggists of tinctures and drug compounds in the preparation of which such liquors or medicated bitters are used and sold on the prescription of a physician, or otherwise, and which tinctures and compounds are not intoxicating beverages prepared in the evasion of the provisions of this chapter nor of the local option law." This is an excerpt from the article above cited, and is article 5060a, Revised Civil Statutes, as amended by said Twenty-fifth Legislature.

The writer undertook to state in the dissenting opinion in the Snearly case, and in the opinion in Williamson v. State, supra, his views as to what were sufficient averments charging a violation of said law. In order to properly charge an offense under this statute, it will be necessary, after setting out the fact that local option was in existence, to aver that the accused was engaged in the business of sell-

ing intoxicants in the local option territory named, without first having obtained a license for the purpose of selling such intoxicants on prescription. Of course, the exception in favor of druggists selling drug compounds must be negatived in the indictment. An inspection of the article shows, with the exception of drug compounds, excepted out of the provisions of the law, that other intoxicants can be sold in such territory only on the prescription of a regular, practicing physician, and in conformity with the local option law. By referring to the local option law, it will be found that intoxicants can not be sold in that territory except on the prescription of a regular, practicing physician, certifying on honor, etc., that such intoxicants are for medical purposes. Now, under the local option law, intoxicants can not be sold except as stated. If this statement is correct, it would follow that the Legislature was requiring a license of the party selling in such territory. It further prohibits any person or association of persons from engaging in the sale of intoxicants in said territory until he has obtained a license to sell on prescription. Therefore a party can not sell intoxicants in such territory, unless drug compounds, except on prescription, without first having obtained a license, even for that purpose. Thus it will be seen that the license to sell on prescription is a sine qua non to selling in such territory under any circumstances. In other words, no person or association of persons can sell liquor or intoxicants under the act in question in a local option territory, with or without prescription, until he has first obtained a license to sell on prescription. He could no more sell in that territory on prescription than he could without prescription until the license had been first obtained. In other words, this law intended to prohibit, was passed for that purpose, and expressly does prohibit the sale of intoxicants in a local option territory in any manner whatever, whether on prescription or without prescription, until the license to sell on prescription has been obtained; and whether he sold with or without prescription would not be a defense, unless the license had been obtained; and if he sold with or without prescription, he would be amenable to punishment under this article, unless he first obtained a license, and not only obtained a license, but the peculiar license herein specified, to wit, to sell on the prescription of a regular, practicing physician. This law limits absolutely both the sale and the license to sell on prescription. The accused can not justify any sale or defeat the cause of action by proving that he was selling otherwise than on prescription. No other than the statutory license would avail, and without this peculiar character of license he can not sell in any manner whatever. He can not answer and say that the selling was not on prescription, for the law replies that the license to sell on prescription is a prerequisite to selling at all. On the trial the proof must correspond with the allegations. If the prosecution should prove that the party selling had no license at all this might be sufficient to justify the jury in concluding that he had not the license to sell on

prescription, because, if he had no license, he certainly would not have the required license; but if he had a license to sell at retail, or on any other terms than on prescription, this would be no answer to the indictment. He must have the license provided by the Legislature. Of course, if the State should prove that the accused had not obtained the license to sell on prescription, this would be sufficient on this branch of the case. But, in any event, before the party can sell in local option territory, he must have the required license to sell on prescription.

By referring to a subsequent statute of said acts of the Twenty-fifth Legislature, it will be observed that this law limits, under the license, the amount of intoxicants to be sold on prescription to one quart or less. In no event can the prescription justify the party selling in the local option territory, even when the license is obtained, in quantities in excess of one quart; and, to enforce this provision of the law, the Legislature required a bond in a heavy sum, and makes it forfeitable for every infraction of the terms of the license.

The information upon which this conviction is predicated is insufficient, and fails to charge an offense against the law; and because thereof the judgment is reversed, and the prosecution ordered dismissed.

*Reversed and dismissed.*

BROOKS, JUDGE (Concurring).—My views on the indictment in this case were expressed in Snearly v. State, 40 Texas Criminal Reports, 507. However, the majority of the court overruled that opinion as to the form of the indictment in Williamson v. State, 41 Texas Criminal Reports, 461. Being a bare question of procedure, I acquiesce in the latter holding, and concur in the opinion herein rendered by DAVIDSON, Presiding Judge. The result outside of the mere form of the indictment in this case is the same as that in the Snearly case, supra; and, in order to maintain a uniformity of decision on questions of indictment, I acquiesce in the holding in this case, and concur in the conclusion reached.

May 22, 1900.

HENDERSON, JUDGE (Dissenting).—The only question is the validity of the indictment, and under the decision of this court in Williamson's case, 41 Texas Criminal Reports, 461, it was sufficient to state that the indictment in this case did not comply with the rule land down in that case, because it failed to allege that appellant was selling under prescription of a physician, as required by law; but it seems my Brother DAVIDSON was not content with his opinion rendered in the Snearly case and also in the Williamson case, but now goes a step further, and holds (without any necessity, so far as the purposes of this case are concerned) that, if a sale of intoxicating liquor is not under prescription, still the seller must have an occupation license. I quote

from his opinion in the Williamson case, supra, as follows: "If this law is valid,—which the writer does not concede,—then it is necessary to charge a violation of the particular character of license required in that particular territory as a prerequisite for engaging in the sale of such intoxicants. As the law requires a license to selling on prescription before the party can engage in the business, in order to secure a conviction for a violation thereof the essential elements of that offense must be distinctly averred. An indictment general in its terms will not do. The only license that can be obtained in local option territory under this act is one authorizing the sale of intoxicating liquors on the prescription of a régular, practicing physician." Now, I submit that under the proposition above stated as to what the indictment should contain it would necessarily follow that the proof should meet the allegations in the indictment; that is, when one is prosecuted for selling liquor in a local option territory without a license, it being necessary to allege that he was making sales of intoxicating liquors on the prescription of a physician, that it would be required of the State to prove this. If this be not true, then I insist that an indictment general in its terms would do, because any sale of liquor in the local option territory without a license would make the party so selling amenable for a violation of the law. This is so elementary that it requires neither the support of argument nor authority. But we are now told "that the license to sell on prescription is a sine qua non to selling in such territory under any circumstances." I maintain that a person selling liquor in local option territory is only responsible for the tax if he sells such liquor according to the law which levies the tax; that is, as I understand it, the tax is levied upon the occupation of selling intoxicating liquor in the local option territory under the prescription of a physician. To hold otherwise would be to put the government in the attitude of collecting a tax upon an illegitimate transaction. This itself, if it be conceded that the tax covered it, would legitimatize the calling; and it would necessarily follow that the government could collect a tax from a person running a "blind tiger;" and if this could be done, it would legalize the sale of such liquors in the local option territory. In consonance with this view it is held that, where the statute exempts certain characters of sale from license tax, as a matter of course, it is no violation of the law to sell such liquors without a license. I apprehend it will not be seriously contended that it would be required, under our statute, for a druggist to have a license to sell tinctures and drug compounds in the preparation of which such liquors enter, and which are not intoxicating beverages, prepared in the evasion of the license law. And, if certain characters of sales of liquor are inhibited altogether in the local option territory, certainly no tax is collectible for such illegal sales, nor would a license protect against such sales. Black. on Intox. Liq., 413, and authorities there cited; Adams v. Hackett, 27 N. H.,

289, 59 Am. Dec., 376. Therefore it follows as a corollary that the government can only collect a tax on the occupation of selling under the prescription of a physician, because this is the only legal sale that can be made in the local option territory. The indictment must allege this, and the proof must correspond with the indictment. A license will be no defense against an illegal sale, such as are made punishable by provisions of the local option law.