BOB SNEAD V. THE STATE.

No. 4405. Decided March 20, 1909.

**1.—Selling Intoxicating Liquors Without License in Local Option Territory— Prescription of Physician—Information.**

The Act of the Twenty-fifth Legislature imposing an occupation tax upon persons, etc., selling intoxicating liquors in local option territory, is valid, and a conviction can be had thereunder against any person, etc., who engages in the sale of intoxicating liquors in such local option territory without license; it was not necessary to allege that defendant was pursuing the occupation without license to sell under prescription of a physician, and an information which

followed approved precedent is sufficient to sustain such prosecution and conviction. Following Cunningham v. State, 52 Texas Crim. Rep., 522; Robinson v. State, 75 S. W. Rep., 526.

### 2.—Same—Repeal—Conflict of Law—Statutes Construed.

The provision of the Act of the Twenty-fifth Legislature providing for license in local option territory was not intended to be repealed by and is not in conflict with the Act of the Thirtieth Legislature, popularly known as the Baskin-McGregor Law; and by the expression and language contained in the last named Act that no license shall issue in local option territory, was meant that the character of the license provided under said Baskin-McGregor Law should not be issued in local option territory. This construction is borne out by the latter law, and other contemporaneous legislation.

### 3.—Same—Evidence—Identification of Intoxicating Liquors.

Where upon trial of selling intoxicating liquors without license in local option territory, the evidence showed that the liquor sold by another party was the same kind of liquor sold by the defendant, and that both received the same from the same source and that this was testified to by the defendant, there was no error in admitting testimony of witnesses who testified that they had drank certain liquor bought from said other party.

### 4.—Same—Evidence—Intoxicating Liquors.

Upon trial of selling intoxicating liquors in local option territory without license, the fact that another person was not prosecuted for having sold the same kind of liquor could be no defense for the defendant having done so, if the liquor was in fact intoxicating; and there was no error to admit testimony to explain why said other party was not being prosecuted, it having been shown by defendant that this other party had sold the same liquor and was not being prosecuted.

### 5.—Same—Evidence Drawn Out by Defendant.

Where upon trial of selling intoxicating liquors in local option territory without license, the State was permitted to show that people had been seen drunk about defendant's place of business, there was no error, as this testimony was drawn out by the defendant.

### 6.—Same—Intoxicating Liquors—Evidence—Alcohol—Hearsay.

Upon trial of selling intoxicating liquors in local option territory without license, there was no error in excluding testimony of a witness to the effect that he had seen the manufacture of certain non-intoxicants and certain intoxicants in a certain brewery, and what he had been told as to the percentage of alcohol contained therein; the witness himself having no knowledge of how much alcohol said liquors contained, except what he had been told.

### 7.—Same—Charge of Court—Words and Phrases.

Upon trial of selling intoxicating liquors in local option territory without license, where the charge of the court, considered as a whole, was not subject to any fair criticism that a certain sentence contained therein made it objectionable, there was no error.

Appeal from the County Court of Erath. Tried below before the Hon. M. J. Thompson.

Appeal from a conviction of selling intoxicating liquors in local option territory without license; penalty, a fine of $400.

The opinion states the case.

*Martin & George,* for appellant.—On question of insufficiency of indictment: Barry v. State, 39 Texas Crim. Rep., 240.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited authorities in the opinion.

RAMSEY, JUDGE.—Appellant appeals from a conviction had in the County Court of Erath County on a charge of selling intoxicating liquors therein without having paid the occupation tax.

1. The case presents a very serious question and one that has been the subject matter of discussion, controversy and difference in this court for many years. A similar question came before us, and was decided adversely to the contention of appellant in the case of Cunningham v. State, 52 Texas Crim. Rep., 522, 108 S. W. Rep., 678. There was, however, as the record shows, no brief filed in that case, nor was the precise question here raised emphasized or pointed out or treated with such directness as to challenge or secure the attention that probably its importance demanded. The indictment in this case averred in substance that appellant sold malt liquors capable of producing intoxication without having first obtained a license so to do, and further that he was not then and there a druggist selling tinctures and drug-compounds in the preparation of which liquors are sold on the prescription of a physician. The substantial question raised in the appeal is that this indictment charges no offense, and the position of appellant is to the effect, in substance, that the indictment charges no offense against the laws of this State.

Chapter 138, section 1, of the Act of the Thirtieth Legislature, provides as follows: "Hereafter there shall be collected from every person, firm, corporation or association of persons selling spirituous, vinous or malt liquors or medicated bitters, capable of producing intoxication in this State, not located in any county or subdivision of a county, justice precinct, city or town, where local option is in force under the laws of Texas, an annual tax of $375." It is suggested that this article further provides that it shall not apply to the sale by druggists of tinctures and drug-compounds, in the preparation of which such liquors or medicated bitters are used and sold on prescription of a physician or otherwise. The argument is that, from this article it appears that a tax can not be levied and collected of persons who sell spirituous or malt liquors in a local option district unless he is selling on a prescription of a physician. In this case it was agreed on the trial that local option law was in force in Erath County, and had been for several years before this offense is alleged to have been committed, and the information charges that the defendant was not then and there a druggist selling tinctures and drug-compounds in the preparation of which said liquors are sold on the prescription of a physician. Article 16, section 20, of the Constitution of the State, provides, that the Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, town or city, or such subdivision of a

county as may be designated by the commissioners court of said county, may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits.   The Legislature, it is urged, in obedience to this constitutional provision, has passed laws authorizing the qualified voters of each county and subdivision named in said constitutional provision, by a majority vote to determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits. Therefore, the argument is, under the Constitution and laws of the State of Texas no person could be licensed to sell intoxicating liquors in a local option district, and a license to him to do so would be a nullity and would be no protection to him unless he sold under a prescription issued by a physician, which is charged in this case. The contention of appellant is, that since he could not obtain a license to sell liquors in a local option territory, that such issue of license or attempt to issue to him so to do would be a violation of law since it would and should be treated as a nullity, that therefore no conviction could be had for undertaking to sell or engage in selling intoxicating liquors in such local option precinct.   This position is well presented in the brief filed by counsel for appellant and was re-enforced by a clear, vigorous and forcible oral argument.

If it was an original question the writer confesses that he would find much difficulty in its solution; nor is it clear, in reason, that a decision adverse to appellant's contention can be rested on safe and sound grounds.   However, as we believe, the identical question has been in terms decided adversely to appellant's contention.   In the case of Robinson v. State, 75 S. W. Rep., 526, the court had under consideration a similar question as it had had not infrequently theretofore.   On full consideration (Judge Henderson dissenting) Judge Brooks, of this court, for the guidance of inferior courts, undertook to lay down and did in haec verba write in the decision a form of indictment for the offense of selling intoxicating liquors in local option precincts without license.   For the purpose of ready comparison we put in parallel columns the form of indictment thus prescribed by the court and the one under which the conviction was had in this case:

"That Buck Robinson, in the county of McLennan, in the State of Texas, heretofore, on the 1st day of June, A. D. 1903, did then and there unlawfully, in justice precinct No. 7 of said county, after an election had been held in said justice precinct of said county by the qualified voters thereof in accordance with law to

"That Bob Snead in the county of Erath, and State of Texas, on or about the first day of April, A. D. 1908, and before the filing of this information, did then and there unlawfully, after an election had been held in said county, by the qualified voters thereof, in accordance with law, to determine whether or not the sale

determine whether or not the sale of intoxicating liquors should be prohibited in said justice precinct, and such election had resulted in favor of prohibition in said justice precinct, and the commissioners court of said county had duly made, passed and entered its order declaring the result of such election, and prohibiting the sale of intoxicating liquors in said justice precinct, as required by law, and had caused said order to be published in the manner and form and for the length of time required by law, sell spirituous, vinous and malt liquors without first having obtained a license for the purpose of selling said liquors; and without first having paid the taxes due the State and county; and the said Buck Robinson not then and there being a druggist selling tinctures and drug-compounds in the preparation of which such liquors and medicated bitters are sold on prescription of a physician. The said taxes then and there due by him to said State amounted to two hundred dollars, and the taxes then and there due by him to said county amounted to one hundred dollars; the said taxes due by him to said county having heretofore been levied by the commissioners court of said county—against the peace and dignity of the State.

of intoxicating liquors should be prohibited in said county, and such election had resulted in favor of prohibition in said county, and the commissioners court of said county had duly made, passed and entered its order declaring the result of said election and prohibiting the sale of intoxicating liquors in said county, and said order had been published in the manner and form and for the length of time as required by law, sell malt liquors capable of producing intoxication, without first having obtained a license for the purpose of selling said liquors, and without first having paid to the State of Texas, the taxes due for selling said liquors and without first having paid to said county the taxes due for selling said liquors, and the said Bob Snead not then and there being a druggist selling tinctures and drug-compounds in the preparation of which said liquors are sold on the prescription of a physician. The said taxes then and there due by him to said State amounted to $200, and the taxes then and there due by him to said county amounted to $100. The said taxes then and there due by him to said county having been theretofore levied by the commissioners court of said county, against the peace and dignity of the State."

It will thus be seen that the information in this case follows almost literally the form deliberately prescribed by the court in the Robinson case.

In the later case of Cunningham v. State, supra, appealed from Erath County, we said: "An examination of the opinions of this court would seem to indicate that there has not been entire harmony in its holdings in respect to informations and indictments charging

the offense of which appellant was convicted in this case. The matter was, however, pretty fairly considered in the case of Robinson v. State, 75 S. W. Rep., 526, 8 Texas Ct. Rep., 137. In that case the information there considered was held to be bad and the prosecution dismissed, and in view of the apparent uncertainty of the law, Judge Brooks, in a very clear and explicit way, lays down for the guidance of prosecuting officers a correct form of information. Applicable to this charge the information here considered is almost literally in harmony with the form there deliberately adopted, which we believe is in every respect conformable to the law and charges an offense against the law."

We might, perhaps, content ourselves here in view of what appears to be the settled holding of this court, but the vigor and earnestness with which the matter is urged upon us demands some further treatment. We gather that before the passage of the Act of the Twenty-fifth Legislature in 1897, there was no provision of law for the granting of license in local option territory unless the same could be inferred from the Act of 1893, brought forward under the Revised Statutes as article 5060a, wherein it is stated that the proviso that nothing in this article shall be so construed as to exempt druggists who sell spirituous, vinous or malt liquors or medicated bitters on prescription of a physician or otherwise from the payment of the tax herein imposed. The Act of the Twenty-fifth Legislature reads as follows: "Hereafter there shall be collected from every person, firm, corporation or association of persons, selling spirituous, vinous or malt liquors, or medicated bitters, capable of producing intoxication, in this State, not located in any county, subdivision of a county, justice precinct, city or town, where local option is in force, under the laws of Texas, an annual tax of $300 on each separate establishment, as follows: For selling such liquors or medicated bitters in quantities of one gallon or less than one gallon, $300; for selling such liquor or medicated bitters in quantities of one gallon or more than one gallon, $300. . . . For selling malt liquors exclusively, $50. And there shall be collected from every person, firm, corporation or association of persons for every separate establishment selling such liquors or medicated bitters within this State and located within any county, subdivision of a county, precinct, town or city in which local option is in force under the laws, the sum of $200; provided, the same shall not be sold in such locality except on prescription and in compliance with the laws governing sales in such localities." Then follows also the provision that druggists shall not be exempt who sell spirituous, vinous or malt liquors capable of producing intoxication, on the prescription of a physician or otherwise. Since the passage of this act, prosecutions for its violation, have come before this court for construction quite frequently and in many of the cases before us, the decisions rested upon and had reference to the sufficiency of the allegations in the indictment. In the case of Snearly

v. State, 40 Texas Crim. Rep., 507, it was held that the adoption of local option does not abrogate the right of the Legislature to subsequently pass a law taxing the sale of intoxicants in local option precincts, and one, before selling intoxicants for medicinal purpose under the provisions of the local option law, must first secure a license as provided by the law. This decision was rested in the majority opinion on this ground: "We think the Legislature has a right to pass laws requiring parties in local option districts to pay a certain tax for the privilege of selling intoxicating liquors not in violation of law as counsel for appellant in this case seems to contend, but the Legislature has the right to levy a tax upon the sale of intoxicating liquors as indicated under the provisions of the law in question where said sales were made in strict conformity to the local option law. Why not? Such a provision on the part of the Legislature is no amendment of the local option law. It neither takes from nor adds to said local option law. It nowhere increases or diminishes its penalties, adds to nor decreases its privileges, and does not change a solitary provision of the local option law." In this case Judge Davidson filed a learned and interesting dissenting opinion, and it will be observed that the concurring opinion of Judge Henderson rests the decision of the case upon somewhat different grounds from those upon which Judge Brooks bases his judgment in the matter. The indictment in the Snearley case was quite similar to the indictment in this case, except that it failed to negative the provision in article 5060a, that same shall not apply to the sale by druggists of tinctures and drug-compounds in the preparation of which such liquors and medicated bitters are used and sold on prescription of physicians or otherwise, and where the tinctures and compounds are not intoxicating liquors prepared in evasion of the local option law. The dissent of Judge Davidson is rested somewhat on the ground that the indictment should negative the above quoted proviso. The question again came before this court in the case of Williamson v. State, 41 Texas Crim. Rep., 461. This opinion was written by Judge Davidson, and the information considered in that case was quite like the one here considered, except that it did not aver in terms, as is here done, that the defendant was not then and there a druggist selling tinctures and drug-compounds in the preparation of which said liquors are sold on the prescription of a physician. While still manifesting his disagreement with the principle laid down in the Snearley case, the information was held insufficient solely on the ground that it did not expressly negative the exceptions contained in the enacting clause defining the offense, and also such as are contained in the body of the statute creating the offense. Judge Henderson concurred in the views expressed by Judge Davidson to the effect that the information should negative the exception contained in the law, and further expressed the opinion that the in-

dictment should go further and allege that the liquors were sold on the prescription of a physician.

Again, the same statute was considered and construed in the case of Watson v. State, 42 Texas Crim. Rep., 13. It was there held that, under the provisions of said article 5060a, Revised Statutes, as amended by the Act of the Twenty-fifth Legislature, pages 223-4, it is a sine qua non to a right to sell intoxicating liquors in a local option territory that the seller should first pay the occupation tax and obtain a license to sell on the prescription of a physician. It is there held that the law prohibits the sale of intoxicants in a local option territory in any manner whatever, whether on prescription or without prescription, until a license to sell on prescription has been obtained. An information seeking to charge said offense is not sufficient, which does not allege that defendant engaged in selling intoxicating liquors in the local option territory without first having obtained a license to sell on prescription of a physician, and which also fails to negative the exception as to druggists selling drug-compounds as provided in said amendatory statute. In that case it is said: "In other words, this law intended to prohibit, was passed for that purpose and expressly does prohibit the sale of intoxicants in a local option territory in any manner whatever, whether on prescription or without prescription, until the license to sell on prescription has been obtained; and whether he sold with or without prescription would not be a defense, unless the license had been obtained; and if he sold with or without prescription, he would be amenable to punishment under this article, unless he first obtained a license, and not only obtained a license, but the peculiar license herein specified, to wit: to sell on the prescription of a regular practicing physician. This law limits absolutely both the sale and the license to sell on prescription. The accused can not justify any sale or defeat the cause of action by proving that he was selling otherwise than on prescription. No other than the statutory license would avail, and without this peculiar character of license he can not sell in any manner whatever. He can not answer and say that the selling was not on prescription, for the law replies that the license to sell on prescription is a prerequisite to selling at all." It is held further, following the Williamson case, supra, that in order to properly charge an offense under this statute it will be necessary after setting out the fact that local option was in existence, to aver that the accused was engaged in the business of selling intoxicants in a local option territory without first having obtained a license for the purpose of selling such intoxicants on prescription. Of course, the exception in favor of druggists selling drug-compounds must be negatived in the indictment. In this case, insofar as the views expressed were out of harmony with the opinion in the Snearley opinion, supra, Judge Brooks dissents, though it being, as he says, "a bare question of procedure I acquiesced in the latter holding (William-

son v. State) and concurred in the opinion herein rendered by Judge Davidson, Presiding Judge. The result outside of the mere form of the indictment in this case is the same as that in the Snearley case, supra, and in order to maintain a uniformity of decisions on questions of indictment I acquiesced in the holding in this case and concurred in the conclusion reached." Judge Henderson's dissenting opinion is rested on the strong ground that a person selling intoxicating liquor in a local option territory is only responsible for the tax if he sells such liquor according to the law which limited the tax, and that to hold otherwise would be to put the government in the attitude of collecting a tax upon an illegitimate transaction, and as we understand it was his opinion that the indictment should allege that the person charged had failed to procure a license to sell in a local option territory under a prescription.

It occurs to us that there are strong grounds for holding adversely to Judge Henderson's views. If it should be held that it was necessary to aver the failure to procure license to sell upon prescription, then in a prosecution where the indictment contains such an allegation it would be admissible to prove, and a conviction could be defeated by proof, that in fact he was not selling under prescription. We do not see just why it is necessary to allege that he was pursuing the occupation without license to sell upon prescription. It is, we think, sufficient to allege that he was selling and pursuing the occupation of a retail liquor dealer in a local option territory without procuring a license which authorized him so to do, and then to negative the exception contained in the enacting clause. This is a fairly full history of the effect and result of the decisions of this tribunal which involve this question. It does not need to be said that the decisions present great and wide differences of opinion between members of the court. Finally, however, if anything can be said to be settled, in the Robinson case, supra, the matter was definitely and finally settled, and the court wrote for the guidance of prosecuting officers a literal and exact form of indictment to be followed and sent it out with approval, and this it has subsequently adopted and approved in the unanimous opinion of the court in the case of Cunningham v. State, supra. Whatever might be my own personal views about the matter, I should not feel at liberty at this late date to still further disturb and confuse this question by a departure from the settled rule long adopted, but feel that we should and ought to adhere to the decision heretofore rendered.

2. The next question presented by this record is whether this law has been repealed by the Act of the Thirtieth Legislature, popularly known as the Baskin-McGregor law. In approaching this question it should always be remembered that repeals by implication are not favored and should never be made effective where the result would be destructive and ruinous of the public welfare, unless such construction is imperatively demanded. An inspection of this law

shows, we think, that it was an attempt to regulate the sale of whisky in non-local option territory, and that there is in this measure no provision for the granting of license in local option territory for the sale of whisky, but that the act expressly provides: "That this article or any of the provisions thereof shall not be construed to be in conflict with any local option law, now or hereafter to be in force in this State, and no license to any retail liquor, or retail malt dealer, shall be issued or shall be effective at any place where the local option law is in force and operation." Section 37, page 268. It is clear, therefore, by a reading of this section that it was intended that this act should not be construed to be in conflict with any local option law, and necessarily therefore not to be held to be in conflict with any law in aid or having special reference to the sale of intoxicants in local option territory. The evident intent and meaning of the above quoted provision of the Baskin-McGregor law was that it was not intended that it should be made to apply to local option territory, but that it had in mind the regulation of and sale of intoxicants in a territory where such sale was permitted, and that the provision of the above quoted section which says, that no license to any retail liquor dealer shall be issued or shall be effective at any place where the local option law is in force, means simply that the provisions of this act with regard to the regulation of the sale and procuring of license have reference to the territory where the sale is authorized, and that such provisions are not intended to apply to local option territory. It is manifest, we think, that the Baskin-McGregor law can stand and should stand in its entirety unless amended as a complete system for regulating the sale of intoxicating liquors in non-local option territory, and that said act was not passed to regulate the sale of liquors in a local option territory to affect license therefor; nor did it have such territory in mind. If this were not so, then there would be no regulation under this law to permit the sale of intoxicating liquors in local option territory at all, even for the purpose expressly permitted and authorized by law. If this construction is to obtain, then no license could be authorized for the sale of liquors for sacramental purposes, medicinal purposes or for any other purpose, and that of necessity in every and any contingency, however great, however inexorable or pressing, one without license who sold intoxicating liquors in a local option territory would be, without any statutory authority so to do. This contention is borne out by proper construction of the other acts of the Legislature passed at the same session regulating the sale of intoxicating liquors in prohibition territory and prohibiting certain matters therein. For instance, we find in the Acts of the same Legislature a very heavy tax imposed upon persons, firms or corporations delivering shipments of whisky in local option territory on what is known as C. O. D. shipments. See Act of Thirtieth Legislature, page 149. Also occupation tax on dealers in nonintoxicants in local option ter-

ritory, page 212. And as further and conclusive evidence of the fact that the Legislature did not intend by the passage of the Baskin-McGregor law to either affect, regulate or repeal the license law for the sale of intoxicants in local option territory, we may cite the provisions of the act regulating the sale of intoxicating liquors and providing that where such sales take place without license that the keeper of such a house was guilty of keeping a disorderly . house. See Act of Thirtieth Legislature, page 246. This act has been, by this court, in express terms sustained in the case of Joliff v. State, 53 Texas Crim. Rep., 61, 109 S. W. Rep., 176. We there held in express terms that this act, chapter 132, page 246, was as applicable to local option territory as well as in non-local option territory, and to this holding there was in the opinion no dissent. As further conclusive evidence on this proposition, we may cite the Act of the Legislature regulating the sale of liquors. and providing that where such sales take place without license that same shall be regarded as public nuisances. See Act Thirtieth Legislature, page 166. This act in terms provides that any person, firm or corporation who may engage or pursue the business of selling intoxicating liquors without having first procured the necessary license are declared to be promoters of public nuisances and may be enjoined at the suit of the State, and this shall apply to persons who manage or conduct a place of business where intoxicating liquors are stored, kept, drank or sold in a local option territory. Among other things, it is there provided: "Any person, firm or corporation who may, under the pretense of selling or dispensing intoxicating liquor on prescription in any county or precinct in this State wherein the sale of intoxicating liquor has been prohibited by law, and who is thus selling or dispensing intoxicating liquor, violates the law, provided, if on final hearing such injunction is sustained the license of such person shall be revoked and he shall not thereafter be permitted to again pursue such business for a period of one year." This, of course, of necessity implies the lawfulness and authority for the grant of a license in a local option territory, and this legislation was passed at the same time and by the same Legislature that enacted the Baskin-McGregor law, and demonstrates beyond the shadow of a doubt that the Legislature did not intend by the passage of the Baskin-McGregor bill to regulate the sale of intoxicating liquors in local option territory, and by this provision, as expressed in the act above quoted, it is demonstrable that the Legislature did not intend to repeal the act with regard to granting license in local option territory. The validity of this last named act was expressly sustained in a luminous opinion by Judge Brown, of the Supreme Court, in the case of Ex parte Dupree, 105 S. W. Rep., 493. It is inconceivable that this could have been done if it could be held that the Baskin-McGregor law had the effect to repeal the then existing or prior legislation regu-

lating or affecting the sale of intoxicating liquors in local option ter-
ritory. It must, therefore, we think, be manifest that the provisions
of the Act of the Twenty-fifth Legislature providing for license in
local option territory were not intended to be repealed by the Baskin-
McGregor Act, and that by the expression and language contained
in the last named act that no license shall issue in local option terri-
tory, was meant that the license provided under the Baskin-McGregor
law should not be issued in local option territory.

3. On the trial appellant objected to the testimony of certain
witnesses, among others, Kay Roberts, who testified in substance
that they had drank certain Hiawatha, bought from one Tom
Bradley. This was objected to on the grounds that the testimony
was immaterial, irrelevant and calculated to prejudice and did preju-
dice the rights of appellant before the jury, and was further objected
to on the ground that the liquor drank by said witness and the others
named did not appear from the testimony to be the identical liquor
sold by appellant and did not appear to be the same kind of liquor
sold by him. In approving the bill evidencing these objections, the
court makes the explanation that the liquor about which Roberts
testified was shown by the testimony to be the same kind of liquor
sold to both defendant and Bradley. We find from the statement of
facts that this explanation of the court is entirely justified. In the
testimony of appellant he says that all of the Hiawatha sold by him
he bought from one W. T. Hammers. Hammers in his testimony
says that he had theretofore been engaged in distributing Hiawatha
in wholesale, and that he sold it in quantities to defendant and also
sold it to Tom Bradley. One S. Roberts also testified that he was a
traveling salesman and auditor for a brewing company that made
Hiawatha. That this stuff he shipped to Mr. Hammers, at Dublin,
who was a distributor or wholesaler. He describes at some length
the method of making the drink and as to its manufacture in bulk,
and there is no suggestion in the evidence at all by anyone that the
Hiawatha sold by Bradley and that sold by appellant were different;
on the contrary, it is manifest that they were the same liquors.

4. Again, appellant on the trial objected to the testimony of
W. T. Hammers, who, among other things, testified as follows:
"Sheriff Cox told me that there was considerable stir about the sale
of the stuff, and suggested to me that I had better close up and quit
the sale of it, and I did so. I had the promise of the sheriff that
I would not be prosecuted if I would voluntarily stop the selling.
That is the reason I quit the business." This was objected to by
appellant on the ground that it was immaterial, irrelevant and cal-
culated to prejudice the rights of the defendant before the jury,
and because the same in no manner constituted a circumstance against
the defendant. In approving the bill the court states that this tes-
timony was permitted by him after the defendant had shown by
Hammers that he had sold the same liquors and was not being prose-

cuted and this testimony was offered to explain why the witness was not being prosecuted. No doubt if this testimony had not been admitted it would have been urged by counsel for appellant before the jury that the fact that Hammers was engaged in selling the same liquor without prosecution was a strong circumstance going to prove that it was known to the prosecuting officers that in fact the liquors were not intoxicating. We are inclined to believe that the court was justified in admitting this testimony. If this were not true, it could nevertheless not have prejudiced appellant in this case. The fact that Hammers was not being prosecuted for having sold the same liquor could in the nature of things be no defense for appellant having done so if it was in fact intoxicating.

5. Again, while the witness White was on the stand he testified over objection of appellant, among other things, to this effect: "I have seen people drunk around about defendant's place of business and have made some arrests there. The people I saw and arrested there were supposed to be drunk on alcohol; they said they were drunk on alcohol." This testimony was objected to because irrelevant and calculated to prejudice appellant before the jury, and because it did not appear from such testimony that the parties referred to by said witness were drunk on the liquor alleged to have been sold by appellant, and because it did not appear from said testimony that said parties were drunk on alcohol. In explaining this bill the judge states that the testimony that the parties referred to, said they were drunk on alcohol, was drawn out by appellant. It is true that this testimony, however adduced, should and could in the nature of things have little relation to the case, but in the light of the court's explanation certainly appellant is without just ground of complaint.

6. On the trial appellant proposed to prove by the witness S. Roberts the facts thus stated in his bill: "That he had been working with the brewery which furnished and manufactured the Hiawatha in question to defendant for a period of fourteen years; that he had been in and about the said brewery, and was familiar with the process of the manufacture of the said Hiawatha, and had seen said brewery make beer and Hiawatha, and that he was informed by the chemist of said brewery that said Hiawatha contained less than two percent of alcohol, and that in no case did the alcohol in said Hiawatha exceed 1.85 percent, and that same contained only 1.75 percent alcohol, and had said witness been permitted by the court he would have so testified." This testimony was excluded, and in approving the bill of exceptions the court states that it was excluded because the witness testified that he had no knowledge of how much alcohol was contained in the Hiawatha, except what the brewmaster and chemist had told him (witness), and that the evidence was objected to because hearsay. An inspection of the statement of facts confirms the truth of the explanation made by the court, and in the light of this explanation the testimony was clearly hearsay. If the witness

had been on trial and had sought to justify his own act of selling on the ground of this information from the chemist, it would have been admissible, but not as testimony to be introduced to prove the non-intoxicating quality of the liquor.

7. The seventh ground of appellant's motion complains of the following sentence of the court's charge: "And having paid to the State of Texas the taxes due for selling such liquors." This sentence was singled out and objected to because, as claimed, it authorized the jury to convict defendant if he had paid to the State of Texas the taxes due for pursuing such occupation. We do not believe that, taking the charge of the court in which this sentence appears as a whole, it is subject to any fair criticism.

This language occurs in the third paragraph of the court's charge as follows: "Now, if you find and believe from the evidence beyond a reasonable doubt that Bob Snead, in Erath County, Texas, on or about the 1st day of April, 1908, did sell malt liquors capable of producing intoxication, without first having obtained a license therefor, and having paid to the State of Texas the taxes due for selling such liquors, then you will find the defendant guilty and assess his punishment at a fine of not less than $200 nor more than $400, or by imprisonment in the county jail for not less than ten days nor more than ninety days in your discretion." That the word "without" was intended to be applied to the sentence challenged "and having paid to the State of Texas the taxes due for selling such liquors" is, we think, too obvious to need discussion.

8. There are some other issues and questions raised in the appeal which we have carefully noted and examined, and in respect to which we think there is no error furnishing a just cause for reversing the case. We have reviewed the case probably at more length than may seem necessary. The first question discussed is important and not free from difficulty. We have reviewed the decisions of this tribunal at great length for the purpose of making our position clear and as a basis for what we trust will be a final and conclusive decision of this issue.

Finding no error in the record, the judgment of conviction is affirmed.

*Affirmed.*