### ISRAEL HILL v. THE STATE.

#### No. 2787.    Decided November 26, 1913.

**1.—Murder—Negligent Homicide—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of negligent homicide, the court's failure to charge thereon was reversible error.    Prendergast, Presiding Judge, dissenting.

**2.—Same—Evidence—Arrest—Confessions.**

Upon trial of murder, it was reversible error to permit the State to prove that while defendant was under arrest and without being warned he made a verbal confession to the sheriff that he shot his wife because she would not go home with him; and this although the testimony was used for impeaching purposes and was afterwards withdrawn upon suggestion of the State.

**3.—Same—Rule Stated—Practice.**

The practice of admitting in evidence illegal testimony and after the matter is thoroughly in the minds of the jury to withdraw it upon the suggestion of the prosecuting officer is condemned.

**4.—Same—Evidence—Prior Difficulty.**

Upon trial of murder, there was no error in admitting testimony with reference to a quarrel which occurred between defendant and his wife, the deceased, earlier in the morning than that which is the basis of the homicide.

**5.—Same—Statutes Construed—Degrees of Murder.**

Upon trial of murder, the defendant had the right to be tried under the old law which defined the two degrees of murder, his case having arisen under the old law.    Articles 15 and 16, Revised Penal Code.

Appeal from the District Court of Harrison.    Tried below before the Hon. H. T. Lyttleton.

Appeal from a conviction of murder in the first degree; penalty, death. The opinion states the case.

*Scott & Caven* and *Hobart Key* and *Geo. J. Ryan,* for appellant.—On question that verdict must state degree of murder: Krebs v. State, 3 Texas Crim. App., 348.

On question of submitting case under new law: Tyree v. State, 70 Kan., 203; Mack v. State, 44 Texas, 65.

On question of court's failure to charge on negligent homicide: McConnell v. State, 22 Texas Crim. App., 354; Liskoski v. State, 23 id., 165.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder, and his punishment assessed at death.

He killed his wife. The witnesses differ widely as to the conditions and circumstances that environed the case and the homicide. The State's case is based upon the theory that appellant and his wife had a quarrel in the morning in which he may have been the provoking cause; at least, the State sought to place blame upon him. He went to work and she went to a neighbor's. Without going into details, later during the morning and before the noon hour, he appeared at the house of the family where his wife had gone. The State's theory of the immediate facts is, in substance, that he undertook to get his wife to go home; she agreed to go, but told him to go on and she would come directly. He then told her if she did not go now she would not go. This was repeated a time or two. Appellant had his gun with him, and is shown to have bought cartridges that morning while at the store, to which place he went to secure bolts to fix a broken plow. It is shown also by the State that the women at the house where appellant went had closed the door against appellant, and he went to a window for the purpose of shooting his wife. That he left there and went back to the door, and forced it open. One of the women pushed the gun to one side and again closed the door. He again opened it with his gun presented, and fired, striking his wife in the upper part of the hip, from which within about sixty hours she died. Appellant's theory is quite contrary to this. He states that he went by the house where his wife was with no purpose of having any difficulty with her, and denies the language imputed to him by the State's witnesses. He said he was trying to induce his wife to go home, and had no purpose or intent of hurting her, and made no threats. In fact, his testimony excludes the idea that he intended to kill his wife. That as he was standing in the door one or more of the women got hold of his gun, and in the scuffle it was in some way discharged and the load of shot accidentally struck his wife. He denied being at the house for any sinister or mischievous purpose, while the women make it apparent he was there for that purpose and intentionally killed his wife, or that such would be a fair deduction from the State's testimony.

Appellant's contention is that he was entitled under this state of facts to a charge upon negligent homicide, first, that he had a right to visit the house at this point to see his wife and if he did no wrong and was here for the purpose of asking or pursuading her to go home with him, it would be negligent homicide of the first degree; second, that the issue of negligent homicide was raised in that if he was doing things that were illegal and unlawful at the residence of these people, it would place him in the wrong legally, and, therefore, if the gun went off accidentally, he would be guilty of no higher offense than negligent homicide of the second degree. He asked special charges submitting these issues to the jury, which were promptly refused by the court. We are of opinion that the evidence raised the issue of negligent homicide, and appellant's contentions are correct, especially with reference to negligent homicide in the second degree. If he was there disturbing the peace at a private residence at which place he had no right to be for illegal purposes and his gun was accidentally discharged in the scuffle, and he did not fire it for the purpose of killing his wife, there would be negligent homicide in the case, and this charge should have been given.

The court permitted the State to prove while appellant was under arrest and without being warned, he made this statement to the sheriff, that he shot his wife because she would not go home with him. Proper objections were urged, appellant was under arrest and unwarned, and, therefore, this statement was no admissible. The court admitted it upon the theory that a predicate had been laid for its introduction as impeachment, and, therefore, the State was entitled to thus impeach appellant. It will be stated further, after it had been before the jury for some time the district attorney stated that after thinking the matter over the authorities hold against him, and he asked the court to withdraw it from the jury, which the court did. That this testimony was inadmissible has been settled so long and so clearly by the adjudicated cases it would seem at this late day unnecessary to even refer to them, but as there seems to be a tendency to ignore the decisions of this court with reference to this matter, it is deemed advisable to again call attention to it and cite the authorities, commencing with Morales v. State, 36 Texas Crim. Rep., 234; Johnson v. State, 43 Texas Crim. Rep., 476; Wright v. State, 36 Texas Crim. Rep., 427; Rodriquez v. State, 36 S. W. Rep., 439; Bailey v. State, 40 Texas Crim. Rep., 150; Walton v. State, 41 Texas Crim. Rep., 454; Parker v. State, 57 S. W. Rep., 668; Johnson v. State, 66 S. W. Rep., 846. These all refer to and reaffirm the rule laid down in Morales v. State, supra. In Brown v. State, 55 Texas Crim. Rep., 583, it was held that in prosecutions for perjury it was reversible error to permit the State to introduce in evidence verbal confessions of the defendant made while under arrest, to impeach him. See also Hankins v. State, 75 S. W. Rep., 787. These cases will be found collated in 5 Vol. Rose's Notes, p. 1108. There are other cases decided by the court since the collation of these cases, but these are all sufficient, it would seem, to show that this rule is settled, if the decisions

of this court can settle anything. In Clements v. State, 69 Texas Crim. Rep., 369, 153 S. W. Rep., 1137, this court held that it was erroneous for the State's attorney to ask a witness questions with reference to a conspiracy between the accused and other parties, when the officer asking the question knew that he could not prove the conspiracy. This opinion was by Judge Harper. If it was error under those circumstances, and the writer thinks Judge Harper's opinion is correct, then it ought to be unnecessary for prosecuting officers, in the face of this long line of decisions settling the law of Texas as they have settled, to be informed of the fact, and it would be a presumption at least in his favor that he knew the law and decisions of the court upon which he must rely in the prosecution of criminal cases. We want to call attention again to another phase of this matter that has occurred with unnecessary frequency, that is, that injurious and illegal testimony will be permitted to go before the jury, and after it has been investigated and discussed until the matter is thoroughly in the minds of the jury, the court will then either of its own volition or at the suggestion of prosecuting officers withdraw it. This practice has been condemned. If such testimony is inadmissible it would take no reasoning to show that this would be a clear violation of the rules of right, justice and law.

There was a bill of exceptions reserved to the admission of testimony with reference to a quarrel that occurred between appellant and his wife earlier in the morning than that which is the basis of this homicide. It was seriously objected that this testimony should not be admitted. The writer is inclined to believe it was admissible. It showed the relations between the parties, and may have tended to throw light on his visit to the house where the homicide occurred. We deem it unnecessary to go into that matter, but as this record presents those questions we are of opinion that it was admissible.

This case was tried and the conviction resulted under the late Act of the Thirty-third Legislature, where the degrees of murder were abolished and a general definition substituted. Appellant generally objected to being tried under the new law, his case having arisen under the old law. The homicide occurred in the early part of April before the late Act went into operation on the first of July. The trial occurred after the first of July. The court gave a general definition of malice, also of express and implied malice, and then instructed the jury that if appellant with malice aforethought killed the deceased he would be guilty and could be punished, but if they found the killing was upon express malice they could only convict him of murder in the first degree. Appellant excepted to all this, and asked a charge submitting murder in the second degree, which is unnecessary to repeat. The contention, without going into details, is that appellant's case having arisen under the old law, he had the right to be tried under that law, and that the two degrees of murder should have been submitted to the jury, and also incidentally to that, that the judgment should be reversed because the

jury failed to state the degree of murder for which they convicted appellant. If the first proposition is correct, the second would necessarily be correct. We are of opinion that appellant had the right to be tried under the old law by reason of the provisions of articles 15 and 18 of the Revised Penal Code.

Article 15 is as follows: "When the penalty for an offense is prescribed by one law, and altered by a subsequent law, the penalty of such second law shall not be inflicted for a breach of the law committed before the second shall have taken effect. In every such case the offender shall be tried under the law in force when the offense was committed, and if convicted, punished under that law; except that when by the provisions of the second law the punishment of the offense is ameliorated, the defendant shall be punished under such last enactment, unless he elect to receive the penalty prescibed by the law in force when the offense was committed."

Article 18 is as follows: "If an offense be defined by one law, and by a subsequent law the definition of the offense is changed, no such change or modification shall take effect as to offenses already committed; but all offenders against the first law shall be tried, and their guilt or innocence determined in accordance with the provisions thereof."

It may be a question as to whether the punishment of the offense is ameliorated by the terms of the new law. Appellant insisted upon being tried under the old law, and under the terms of the statute he had a right to be tried under that law, and it might be, so far as this case is concerned, if murder in the second degree had been given as requested by appellant under the old law, the jury would have found him guilty of murder in the second degree, which would unquestionably have been a milder punishment than this, because they could not have inflicted the death penalty for murder in the second degree. Be that as it may, he demanded the right and submitted charges to the effect that he desired to be tried under the old law, under which the offense was committed. This he had a right to demand, and the court should have tried him under that law. This much is said so that upon another trial the court will try the case under the old and not the new law, if demanded by defendant.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE.—I concur in the disposition of this case. I am inclined to believe no charge on negligent homicide should have been given—that submitting accidental killing was all that was required.