JOHN RAINS v. THE STATE.

*No. 376.   Decided May 2.*

**1. Confession Made While Under Arrest—Charge.**—Where a confession made while the accused was under arrest is introduced in evidence, but there is a conflict in the evidence as to whether the officer having him in custody cautioned him before it was made, notwithstanding the officer so swears, *Held*, that the court should have instructed the jury, in effect, that unless they believed the officer had so cautioned him they should entirely disregard the confession as evidence of guilt.

**2. Same—Impeachment of Defendant.**—If a confession be made by a defendant while under arrest, and when he has not been cautioned, such confession is admissible to impeach the credibility of defendant when a witness, but not to establish his guilt. But if in addition inducements were held out to defendant to make the same, and no fruits of the crime were discovered in consequence thereof, then his confession is not admissible, either in proof of guilt or as an attack upon his credibility when he has been a witness.

**3. Same—Inducements to Make Confession.**—As a general rule, if the confession was made under inducements held out to accused they are not admissible for any purpose, though he had been previously cautioned.

**4. Discovery of Fruits of the Crime by Reason of the Confession.**—Under our statute an exception to the above general rule is, that though the confession of a party under arrest was made on account of inducements held out to him, yet, "if in connection with his confession he make statements of facts or of circumstances that are found to be true which conduce to establish his guilt, such as the finding of secreted or stolen property," etc. (Code Crim. Proc., art. 750), the confession is admissible; but

the fruits of the crime must have been discovered by or through the statements or confessions in order to render them admissible.

Appeal from the District Court of Houston. Tried below before Hon. A. B. Watkins.

This appeal is from a conviction for arson, the punishment being assessed at five years' imprisonment in the penitentiary.

The indictment charged appellant, John Rains, and Ralph Barrs and Jim Hunter with setting fire to the storehouse of J. P. Grant and N. M. Rayburn. The case as to Barr and Hunter was nolle prossed by the district attorney for want of sufficient evidence against them.

The matters pertaining to the confession of defendant to the officer arresting him are thus stated in the testimony of the State's witness R. V. Watts:

R. V. Watts, being sworn, testified: "I was deputy sheriff in Lovelady, in January, 1893. About 8 o'clock on the morning after the fire I went to Mrs. Roberts' house to arrest John Rains. I found him in bed; told him to put on his clothes and go down town with me. When I arrested him he was charged with the burning. He began crying." [Witness was asked to state what John said about the burning at that time. Here counsel for defense objected, because the statements were made under arrest, and at their request the jury was retired. The court then heard the facts the State expected to prove by witness (counsel for the State insisting that they were admissible, because it was shown that the bottle and oil can were discovered as defendant represented), and ruled that the same were inadmissible as confessions or voluntary statements. The jury was then called, and as they were being sent for, the witness, while upon the stand, called the district attorney to him, and after a whispered conversation witness was then asked the question, "Did you warn John Rains that what he said might be used against him, before he made any confessions to you, and how?"] "I told him to be careful, that I did not like to advise him, but that any statement he made might be used against him as evidence. He then told me that he, Jim Hunter, and Rafe Barrs burned the house, and gave all of the details about how it was burned. I told him I would take him down to the saloon where his father and brother were, and that they could advise him what to do. He then asked me to let him see Jim Hunter. I told him I could not allow him to speak to Jim. He then asked me if Jim had given the thing away. I asked him where he got the oil that he poured on the house. He replied, 'Out of a bottle.' I asked him what kind of a bottle. He said it was an O. S. K. whisky bottle. I asked him where he put the bottle. He answered, 'Near the old lime house,' and carried me to show me where he put it. When he got there he looked for it, and it was gone. I then told him I had already found the bottle. He then told me, 'To

prove to you that I am telling the truth, I will show you where I left the oil can.' We then went to Nelson & O'Kief's store, and he pointed out the can to me lying upon a sack of flour. He told me he went there the evening before to buy oil, but it was late and they would not sell him any. I then carried him before Justice Waddell and had him file a complaint against Rafe Barrs and Jim Hunter. I told him that if his statements were true, and unless the district attorney dismissed his case, he would go to the penitentiary; and he replied, 'Hell! if they do I will carry plenty of company with me.' Defendant asked me at first if he turned State's evidence could they prosecute him, and I told him that if the district attorney agreed not to they would not, but that he must see Mr. Nunn about that. I had previously found the O. S. K. whisky bottle where he said it was. It had had kerosene oil in it."

Cross-examined: "I am sure I warned the defendant before he made the statement to me. I did not promise to release him from custody if he made any statement to me, but told him that the district attorney might agree to do so. I testified at the examining trial of John Rains, held at Lovelady. I testified then that I warned John before he made any statements to me, and if it does not appear in my sworn testimony taken down at the examining trial it ought to. I testified in a former trial of this case in the District Court. I think I stated then that I had warned John before he made any statements to me. My testimony then was the same as it is now. The judge held it inadmissible and instructed to not regard it, but I do not know why. It is a fact that a few moments ago, after the judge held my testimony inadmissible, I called the district attorney to me, and told him 'that I had warned John before he made the statement, and that would make it admissible.' There was at the time of the fire, and is now, a great deal of prejudice against John, but I bear none against him. I belong to the Law and Order club. I did not contribute anything myself towards employing private counsel. I opposed it; but others did. When I carried John before the justice, Mr. Grant had already made affidavit against Rafe Barrs, Jim Hunter, and John Rains. The bottle I found was an O. S. K. whisky bottle, and smelled of kerosene. I repeatedly warned the defendant that his statements might be used against him. When I first warned him no one else was present, but afterwards I warned him in the presence of his father and others. I think Mr. Perry was present at one time."

Several witnesses, among whom was Earl Adams, Esq., who had been employed to assist in prosecuting the case from the beginning, and District Attorney Nunn, testified, that neither at the examining trial nor at the former trial of this case, when a mistrial was had, did the witness Watts testify that he had warned defendant before he had made his confession.

The defendant himself testified, that he had not been cautioned by Watts, and that Watts told him when he arrested him that he, Rafe, and Jim were charged with burning the house, "and that if I would turn State's evidence he would turn me aloose. I told him I knew nothing to tell. He said they would put me in the penitentiary if I did not. They got me scared, and I concluded to tell them some kind of tale on Watts' promise to release me. I then told Watts that Jim Hunter and Ralph Barr and I had poured oil on the house and set it on fire. I told him how we got the splinters and the oil, and how it was set on fire, but that was all a lie." Witness also said, that he had heard of Watts having found a bottle with oil in it, which he had told him he had put where Watts had found it. Also told him about the oil can which he (defendant) had left at Nelson & O'Kief's. Defendant said the truth as to the oil can was, that on the evening before his sister had asked him to fill up the lamps. He had taken the can down to the store to buy some oil; that they would not sell him the oil because it was too late, and he had left the can at the store.

No briefs found with the record.

HURT, Presiding Judge.—This is a conviction for arson. Without the confession of the accused, the evidence is not sufficient to support this conviction. Deputy Sheriff Watts swears, that he cautioned accused, and this being so, the confessions were admissible; but there are strong circumstances in this record which tend to show that Watts had not cautioned the defendant at any time. Under this condition the court should have instructed the jury, that if they believed that Watts had cautioned the accused before the latter made the confession, then such confession should be considered by them, together with all other evidence before them; but that if they believed that the accused had not been so cautioned, they should entirely disregard the confessions.

Appellant swears, that such inducements were held out to him by the deputy sheriff as caused him to confess his guilt; but that in fact he was not guilty and knew nothing of the crime. If the inducements sworn to by the defendant were in fact held out to him by the deputy sheriff, then his admissions of guilt were not admissible for any purpose, though the defendant was cautioned. Under our statute, if a statement made by the accused leads to a discovery of the fruits of the crime, then such statements will be admissible as a confession, although at the time the accused was under arrest, or inducements were held out to him to make the statement. Weller v. The State, 16 Texas Crim. App., 200. But to render the confession admissible under this exception, the facts or circumstances must be discovered by means of the statements made. If they had already been discovered when the ac-

cused made his statement, or were not discovered by means of the statement of the accused, they are not admissible.    Walker v. The State, 2 Texas Crim. App., 326; Allison v. The State, 14 Texas Crim. App., 122; Nolen v. The State, Id., 474.   In this case there were no facts and circumstances found to be true in pursuance of the confession which conduced to establish the guilt of defendant.   The trial judge so held, and we think the holding correct.   As there was a conflict in the testimony of appellant and Watts as to whether or not the latter held out inducements to appellant, such as to render his confession inadmissible, the court should have submitted this question to the jury, instructing them, in effect, that if they believed from the evidence that such inducements were held out, then such confession was not admissible for any purpose—could not be used to prove guilt, or as an attack upon the credibility of the defendant as witness.   If, on the other hand, no such inducements were held out, and appellant was cautioned, then to consider the confession.   But appellant testified in the case.   This being so, the confession of the accused, though not cautioned, could be used by the State, not for the purpose of proving guilt, but to affect his credit as a witness.   If, however, he was induced to confess by the promises of the deputy sheriff, no fruits of the crime being discovered by reason thereof, his confession could be used for no purpose whatever.   These rules were not given in the charge of the court, though some of them were requested by counsel for appellant.

For the omission in the charge, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.