## Warren Johnson v. The State.

### No. 2423.   Decided February 19, 1902.

**1.—Evidence—Defendant's Statements Under Arrest and Without Warning.**

It is not admissible to prove by defendant, on cross-examination, the statements of defendant while he was in arrest, denying has name and identity, where he had not been warned by the officer to whom they were made, and such statements do not become legitimate because defendant answered the questions without objection.

**2.—Same.**

The statute gives perfect immunity to a defendant while he is under arrest and unwarned, as to any statements he may have made, and testimony as to such statements is inadmissible either as original testimony or for the purpose of impeaching him.

**3.—Murder—Self-Defense—Provoking Difficulty—Charge.**

On a trial for murder, a charge of the court is erroneous which instructs the jury, in effect, that the mere fact of defendant's seeking deceased for the purpose and intent of bringing on a difficulty would per se forfeit his right of self-defense. He must, after seeking deceased, have done some act or made some declaration calculated to provoke the difficulty with intent to kill before he would be guilty of murder; and if by his wrongful act he brought on the difficulty with no intention to kill, he would be guilty of manslaughter where death ensued.

**4.—Provoking Difficulty—Charge.**

The bare intent to provoke a difficulty will not authorize a charge on provoking a difficulty.

Appeal from the District Court of Grimes.   Tried below before Hon. J. M. Smither.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Gus Fuqua, on the 30th day of November, 1897.

The parties were negroes and friends up to the difficulty which occasioned the homicide. They attended a festival at the house of a woman named Seymour. This woman got defendant to act as her clerk in the sale of soda water. Deceased bought some of the soda and defendant charged him with dropping a nickel with a hole in it in the glass where the money received for the soda sold was kept. Deceased denied the charge, but finally paid him another nickel. It seems he became offended at defendant because he had made the charge against him in the presence of the ladies, and it was proved by some of the witnesses that he made threats as to what he would do with defendant on the way home from the festival. There is a conflict in the evidence as to which of the parties started home first from the festival. Some of the witnesses testified that deceased started first, with some women, and that the defendant overtook them and a quarrel ensued about the occurrence concerning the nickel, and that defendant shot deceased, who was unarmed. Defendant's testimony was to the effect that deceased accosted him on his way home and commenced quarreling with

him concerning his charge against him, deceased, about the nickel, and that deceased caught him in the collar and cut him with a razor, whereupon defendant drew his pistol and shot him.

The other questions discussed in the opinion are sufficiently stated, and need no further illustration from the record.

*W. W. Meachum,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at four years confinement in the penitentiary.

The state introduced Cross Baker, who testified that he went to the calaboose and found defendant there, "and I asked him if he knew me, and he said 'No.' I then asked him if his name was Warren Johnson, and he said 'No.' I then told him that he need not deny that his name was Warren Johnson, and he said that was his name. I did not know him myself at the time. I had never seen him before, but I had a man to identify him. That, during all the conversation with me, defendant was under arrest." This testimony was introduced by the State in rebuttal of defendant's testimony that he had not denied his name to Cross Baker. Defendant moved to exclude this testimony from the jury because it appeared at the time he was under arrest and in the calaboose, and it was therefore inadmissible even to prove that defendant denied his name or to impeach his credibility as a witness, for which purpose the district attorney stated he offered said testimony. The court overruled the motion, and to the bill appends this explanation: "J. C. Baker, sheriff of Grimes County, was put on the stand by the State and testified to having arrested defendant in Travis County, for the purpose of proving defendant's flight after the alleged homicide. Afterwards defendant, while on the stand as a witness, stated in answer to a question propounded to him by the district attorney that when he was under arrest and in the station house at Austin, Travis County, he did not deny his name to Baker, and, pointing to Baker, in the court room, said, 'Did I, Mr. Baker?' After this the State put Baker on the stand to contradict defendant on this point, whose testimony and its effect were fully explained and limited to the jury in the charge of the court." It appears from the foregoing explanation that the learned trial judge seems to have thought the testimony admissible, because, without objection, appellant had answered the question of the district attorney, on cross-examination, as to whether he had denied his identity, and that this fact made admissible the proof on the part of the State by the sheriff that while under arrest he did deny his name. The fact that defendant did not object to testifying on cross-examination to statements made while under arrest would not be a predicate or authority on the part of the State to introduce testimony either to impeach him on said statement, or to prove statements

made while under arrest without warning as required by the statute. It was improper for the district attorney to ask defendant if he had not denied his name while under arrest. If defendant made no objection to said question, this would not authorize the State to introduce the sheriff to testify to statements made while under arrest. We have held that this statute requiring warning before defendant's statements under arrest can be introduced gives perfect and complete immunity to defendant, and such testimony is not admissible, without warning, either for the purpose of impeachment or as original testimony. Wright v. State, 36 Texas Crim. Rep., 427; Ware v. State, 36 Texas Crim. Rep., 597; Morales v. State, 36 Texas Crim Rep., 234.

Appellant objects to the following portion of the court's charge: "If you believe that defendant shot Gus Fuqua as a means of defense, believing at the time that he was in danger of losing his life or of serious bodily injury at the hands of the said Gus Fuqua, then you will acquit defendant, unless you further believe from the evidence, beyond a reasonable doubt, that defendant sought the meeting with said Gus Fuqua for the purpose of provoking a difficulty with said Gus Fuqua with intent to take the life of said Gus Fuqua or to do him such serious bodily injury as might probably end in the death of said Gus Fuqua; and if you so believe from the evidence, beyond a reasonable doubt, then you are instructed that, if defendant sought such meeting for said purpose and with such intent, defendant would not be permitted to justify on the ground of self-defense, even though he should thereafter have been compelled to act in his own self-defense, but if he had no such purpose and intention in seeking to meet said Gus Fuqua, if he sought to meet him, then his right of self-defense would not be forfeited, and he could stand his ground and defend himself by the use of such means of defense as the facts and circumstances indicated to be necessary to protect himself from danger, or what reasonably appeared to him at that time to be danger." Appellant objected to this charge on the ground that the same is upon the weight of the evidence, as applied to the facts of this case, and inapplicable to the facts of this case introduced in evidence before the jury. These objections are well taken. The mere fact that appellant may have sought the meeting with deceased for the purpose and with the intent to bring on a difficulty would not, per se, forfeit the right of self-defense. The law is that if he sought deceased for the purpose of provoking a difficulty, and did some act or made some declaration calculated to provoke a difficulty, then his right of self-defense would be forfeited. If appellant sought deceased and did said act or made said declaration for the purpose of bringing on a difficulty and thereby killing deceased, then appellant would be guilty of murder. If he did not bring on the difficulty for the purpose of killing deceased, but his own wrongful act, as stated above, brought on said difficulty, then, if the killing ensued on the part of appellant, he would be guilty of manslaughter. We have on various occasions discussed the law in reference to this matter, and have uni-

formly held that the bare intent to provoke a difficulty will not authorize a charge on provoking the difficulty. Shannon v. State, 35 Texas Crim. Rep., 2; Tollett v. State (Texas Crim. App.), 55 S. W. Rep., 575; Young v. State, 41 Texas Crim. Rep., 442.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*