## ED JAME v. THE STATE.

### No. 1238.   Decided November 8, 1911.

### Rehearing denied November 29, 1911.

**1.—Burglary—Sufficiency of the Evidence.**

Where, upon trial of burglary, the evidence sustained the conviction, there was no error.

**2.—Same—Charge of Court—Domestic Servant.**

Where, upon trial of burglary, the evidence did not show that the defendant was a domestic servant of the party injured, or was employed by him in any capacity, there was no error in refusing a requested charge on the law of domestic servant.

**3.—Same—House—Refrigerator—Ice Box.**

Where, upon trial of burglary, the evidence showed that the defendant was about to enter by force a refrigerator or ice box used for the preservation of meats, etc., and which was about seven feet high and five or six feet wide, and could be entered by a man through a door. Held, that under well established precedent such refrigerator or ice box was a house within the meaning of the statute applicable to burglary. Following Bingham v. State, 31 Texas Crim. Rep., 249, and other cases.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

*Marsene Johnson* and *Elmo Johnson,* for appellant.—The court erred in holding that the little ice box alleged to have been burglariously entered was a "house," because the same was neither a "building" nor a "structure" as the two last terms are used in the statute, because the words "building" and "structure" not being specially defined are to be taken and construed as used in their ordinary meaning with reference to the offense of burglary, otherwise a child's tool box might be construed to be a "structure;" the object of the burglary statute being to protect "houses" and not mere places used solely for the purpose of storing goods which are so limited in area as to be merely an ice box or refrigerator, and which are not used as sales rooms nor for any character of personal occupancy, appellant cheerfully conceding that an humble structure occupied as a home or as a store from which to sell goods at retail, however humble it may be, is within the protection of the statute, but he does contend that a mere showcase or ice box used for displaying or merely temporary holding of goods, was not contemplated by the Legislature as being sufficient to convert an ordinary theft into a burglary, especially as a defendant is liable to a separate and distinct prosecution for each offense. Clark v. State, 56 Texas Crim. Rep., 494; Williamson v. State, 39 Texas Crim. Rep., 60; 73 American State Reports, note on page 953.

*C. E. Lane,* Assistant Attorney-General, for the State.—Cited cases in opinion.

PRENDERGAST, Judge.—Appellant was indicted and convicted of burglary, and given the lowest penalty of two years confinement in the penitentiary.

It is unnecessary to give in detail the evidence. We will only give in substance a sufficient statement of the case to disclose and discuss the issues raised.

E. Bouisson is the party whose "house" was charged to have been burglarized with intent to steal from him. This person rented from a cold storage concern a refrigerator or box therein which was situated in a large, cold storage room. Some two or three other butchers, as he was, also had refrigerators in the same large, cold storage room. These refrigerators are shown to be about seven feet high, five or six feet wide, and to have a door as the means of going in and out of it. Complaining witness paid $50 a month rent for this refrigerator. He sublet a portion of it to another butcher, who paid him $15 per month. Bouisson had the control of this, although his subtenant had the privilege of going in and out of it to store and procure his meats therefrom whenever he saw proper. As to the way the business was conducted, each of these persons, in addition to themselves slaughtering their own animals, and placing it therein, would order meats from the packeries and have the packeries' agents to go to the refrig-

erator plant and get the key to this refrigerator, where they kept it within the knowledge of all these persons, and store the meats therein for them, upon unlocking and opening, and then locking and returning the key to the place where all these persons knew it was kept. In storing their meats in there Bouisson and his subtenant would have their employes to go into this refrigerator and hang their meats in their respective portions, and then close and lock the refrigerator, and would likewise, as they needed these meats for retailing it in their markets, go or send and get it therefrom.

Bouisson had been missing meats stolen out of there and he had the man in charge of the plant to watch the refrigerator. This man a few days before the time the burglary is charged saw the appellant get the key to Bouisson's refrigerator, unlock it and take a piece of meat out of it, and place it in the refrigerator of his employer. His employer testified appellant had no right, permission or authority to do this. In other words, the testimony clearly shows a theft of meat out of the complaining witness' refrigerator on this occasion. He and Bouisson then proceeded to watch his refrigerator and secreted themselves, boring a hole in the wall, which gave them a view of it, so they could detect the thief. Late one evening—the day the burglary is charged—they both saw the appellant surreptitiously get the key to the complaining witness' refrigerator and unlock it, and was in the act of entering it when these persons watching emerged from their hiding place. Appellant discovering them, attempted to run, but was grabbed by one of the witnesses, a pistol presented on him, and he finally succeeded in getting loose and ran into his employer's refrigerator, closed the door behind him, and remained therein, to prevent being shot by the witness, until an officer was phoned for, who came and arrested him and took him away. It was clearly shown that the appellant had no authority or consent whatever of the complaining witness or his subtenant or anyone else to unlock or go into Bouisson's refrigerator, and to take out or place anything therein, but he did have authority to go into the cold storage large room where these refrigerators were located and take out and put in his employer's refrigerator the meat products of his employer, who had another different and distinct refrigerator from that of Bouisson.

The proof clearly showed the burglary under the terms of our law. There was no bill of exceptions to the admission or exclusion of evidence. A large number of appellant's grounds in his motion for new trial is to the admission of certain evidence, but there are no bills of exception to any of them, and we can not pass upon any of these questions.

The first complaint is that the court erred in not charging on the law of burglary by a domestic servant, claiming that the evidence raised this issue. No special charge was asked on this or any other subject. The evidence does not raise the issue. He was not a domestic

servant of the complaining witness, nor employed by him in any capacity whatever, and he did not claim to be. He was shown by all the evidence to have no permission or authority of anyone to enter the complaining witness' refrigerator for any purpose.

The seventh paragraph of appellant's motion for a new trial complains of certain questions that were asked by the State of the complaining witness and the answers thereto, and of certain objections that he made to the introduction of such testimony, this ground of the motion being something like a half page of typewritten matter, the last two lines of which are: "The defendant says that the ice box in the building was and is not a house and was not the subject of burglary," and, therefore, claims that the court should have instructed the jury to find him not guilty of burglary. Under this appellant claims that the refrigerator is not such a house as is contemplated by our burglary statute. Article 843, Penal Code, says: "A 'house' within the meaning of this chapter is any building or structure erected for public or private use, whether the property of the United States, of this State, or of any public or private corporation or association or of any individual, and of whatever material it may be constructed." By this it will be seen that the word "house" under our burglary statutes has the very broadest signification and meaning. As said by this court in Barber v. State, 69 S. W. Rep., 515: "We have no common law offense in our State and our statutes on the subject of a house are very comprehensive," and the decisions of our court show that any building which may be a house under our statute is the subject of burglary. And in that case a corn crib in which was kept feed in store for horses was held to be a house within our burglary statute.

In Bingham v. State, 31 Texas Crim. Rep., 294, a sheriff's office and a vault in said office in the courthouse was held to be a house within the meaning of this statute.

In Favro v. State, 39 Texas Crim. Rep., 452, 46 S. W. Rep., 932, this court held that a tent fastened to a plank which was nailed to stakes driven into the ground stretched over a pole from two forks driven into the ground and which had a door made by placing a loose door not fastened to the tent, and boxes to obstruct the ingress thereto, was a house within the meaning of this statute. And so a smokehouse was held to be a house within the meaning of this statute in Irwin v. State, 37 Texas, 412, and Albritton v. State, 33 Texas Crim. Rep., 294, 26 S. W. Rep., 398. And so a fruit stand in which a vendor kept his fruits in a box somewhat the shape of a piano box and a little larger, from which he could make sales by remaining out on the ground at it or get into it for that purpose, was a house in Willis v. State, 33 Texas Crim. Rep., 168. And so in Anderson v. State, 17 Texas Crim. App., 305, it was held that an office picketed off in one corner of a hardware house only ten by ten feet, the pickets being about three inches apart, four feet high, and an open

space between the tops of these to the ceiling of the house about six feet, with a small gate or door into this in which a safe and the books of the concern were kept, was a house within the meaning of this statute.

Under these authorities we are clearly of the opinion that the refrigerator which was charged to be burglarized in this case was a house under our burglary statute.

There are no other questions raised in such way that it is necessary for us to consider them. The ones we have discussed above are the only material ones in this case.

There being no reversible error pointed out, the judgment will be affirmed.

*Affirmed.*

[Rehearing denied November 29, 1911.—Reporter.]