Franklin Lovere **BUTLER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 44220.

Court of Criminal Appeals of Texas.

Feb. 28, 1973.

Rehearing Denied May 1, 1973.

John M. Anderson, Fort Worth (On Appeal), for appellant.

Frank Coffey, Dist. Atty., William W. Chambers, Grant Liser and R. W. Crampton, Asst. Dist. Attys., Fort Worth, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

The conviction is for murder where the punishment was assessed at 25 years.

This appeal presents, in part at least, the question of whether an accused in a criminal case who takes the witness stand in his behalf may be impeached through the use of an oral confession or statement not taken in compliance with Article 38.22, Vernon's Ann.C.C.P.

At the outset, it should be observed that appellant, in his ground of error, complains *only* of a violation of Article 38.22, supra, and does not advance any claim that there was any violation of his federal constitu-

tional rights. Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not even cited.

■ The admission of an oral confession that otherwise complies with the Fifth Amendment involves no federal constitutional infirmity. The prohibition against the use of oral confessions is a matter of a state statute. Article 38.22, supra.

*Miranda* was not violated by the introduction of the testimony concerning the conversation between the appellant, who was in custody, and his wife because the record reveals the *Miranda* warnings were given at the scene of the alleged crime and twice by a magistrate prior to the complained of statement, and the appellant has not raised, either at the trial or on appeal, any question concerning an affirmative waiver.

The undisputed evidence reflects that the deceased, Jackie Earl Nelson, died as the result of a pistol shot fired by the appellant while both the appellant's and the deceased's vehicles were moving, after appellant had begun pursuit of the deceased at a grocery store parking lot, in Tarrant County, on the night of June 6, 1969. The theory of the State's case in chief was that the appellant sought out the deceased Nelson and shot him as Nelson had, according to appellant's statement made at the scene of the alleged offense, called appellant's wife "names"; had been giving her "a hard time," and had been giving him "a little bit of trouble."

Testifying in his own behalf, appellant related the deceased, whom he did not know, and two other boys robbed him of several hundred dollars and ran in different directions; that the deceased fled in an automobile and that he gave chase and, during the pursuit, his gun accidentally discharged, striking the deceased.

On cross examination, he denied that the deceased had called his wife names, etc., or that he had ever seen the deceased before the date of the occasion in question. He denied or could not recall any instance where boys had driven past his house and called his wife names or that he had conversation at the police station concerning such instance.

On rebuttal, over objection, Sgt. Wiggins was permitted to testify that he was present and heard a conversation at the police station between appellant and his wife three and a half hours after his arrest and that "the conversation was about parking his boat back into his driveway some night or two previous and that he had the power beam lights on lighting up the yard and some boy came up in a white model car and called his wife an old bitch."

This testimony was used to contradict and impeach the appellant and, in a sense, corroborate the State's theory of the case. No limiting instruction was given and none was requested.

The testimony was a direct attack upon his testimony. It was criminative and, as used, critically so.

To understand the nature of the question presented, the history of our confession statutes become important.

In Pierson v. State, 145 Tex.Cr.R. 388, 168 S.W.2d 256 (1943), part of that history is set forth, as follows:

"The admission in evidence of a confession of one accused of crime has always been controlled by statute in this state.

"Under the Code of Criminal Procedure of 1857, known as the 'Old Code', Article 661 thereof reads as follows: 'The confession of a defendant may be used in evidence against him if it appear that the same was freely made without compulsion or persuasion, under the rules hereafter prescribed.' Said Article has remained unchanged throughout the years and appears as Art. 726 of our present Code of Criminal Procedure. Article 662 of the Old Code read as follows: 'The confession shall not be used,

if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in custody of an officer, unless such confession be made in a voluntary statement of the accused, taken before an examining court in accordance with law, or be made voluntarily after having been first cautioned that it may be used against him.'

"Under this Article, oral confessions made in accordance with the provisions thereof were admissible in evidence. However, as to such confessions, the court stressed that great caution should be exercised because such were 'so liable to be misunderstood, so easily fabricated, and so hard to be contradicted.' Gay v. State, 2 Tex.App. 127; Riley v. State, 4 Tex.App. 538; Cain v. State, 18 Tex. 387.

"Said Art. 662 of the Old Code was later amended by adding thereto the following language: 'or unless in connection with such confession he make statement of facts or of circumstances that are found to be true which conduce to establish his guilt, such as the finding of secreted or stolen property, or instrument with which he states the offense was committed.'

"Said Art. 662 of the Old Code as thus amended appeared as Art. 750, C.C.P. of 1879, and remained unchanged until amended, by Chapter 118, Acts of the Regular Session of the 30th Legislature, in 1907, to read as follows: 'The confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of accused, taken before an examining court in accordance with law, or be made in writing and signed by him; which written statement shall show that he has been warned by the person to whom the same is made; First, that he does not have to make any statement at all. Second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made; or, unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed. If the defendant is unable to write his name, and signs the statement by making his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness.' Said Chapter 118 became and is Article 727 of our present Code of Criminal Procedure. It will be noted that the outstanding element of the Amendment of 1907 was to require that the confession be in writing under certain circumstances. Since that time, an oral confession is not admissible 'unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, * * *', or unless such oral confession is a part of the res gestae. Holmes v. State, 100 Tex.Cr.R. 635, 273 S.W. 849; Lightfoot v. State, 117 Tex.Cr.R. 515, 35 S.W.2d 163; Broussard v. State, 134 Tex.Cr.R. 1, 114 S.W.2d 248; Yarbrough v. State, 136 Tex.Cr.R. 7, 123 S. W.2d 356; Hext v. State, 104 Tex.Cr.R. 46, 282 S.W. 242.

"The legislative history thus presented shows that the legislature of this state has gradually restricted the use or admission in evidence of confessions of one accused of crime made while in jail or in custody of an officer." 168 S.W. 2d 258, 259.

Since such historical recitation in *Pierson,* it is observed that Article 726, C.C.P. 1925, was brought forward in the 1965 Code of Criminal Procedure, unchanged, as Article 38.21, Vernon's Ann.C.C.P.1965, and former Article 727 was revised, becoming Article 38.22, Vernon's Ann.C.C.P.

1965 (Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722). Said article retained the restrictions of the earlier statutes and further provided that a written confession would not be admissible unless it showed that the accused had been warned by a magistrate and also by the person taking the confession. The statute was again amended in 1967 (Acts 1957, 60th Leg., p. 1740, ch. 659, § 23) superimposing the *Miranda* warnings and requirement of waiver upon the statutory scheme as to written confessions.[1] Such revision eliminated the necessity of the double warning with regard to a written confession, and authorized voluntary oral confessions made while in jail or custody under the following three circumstances:

(1) where it be shown to be the voluntary statement of the accused taken in an examining court (§ 1(a));

(2) where the accused makes an oral statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed (§ 1(e)); or

(3) where the oral statement was "res gestae of the arrest or of the offense" (§ 1(f)).

■ Thus, the legislature has made a statutory determination that proof of extra-judicial oral confessions made while in custody are generally unreliable. This exclusion is not one of constitutional requirement. The wisdom of this legislative policy is not a matter for this court.

In the instant case, the statement made by the appellant while in jail three and a half hours after his arrest and the alleged offense which was used for impeachment

was not reduced to writing. It was oral and made without any showing of excitement. It did not lead to the fruits of the crime, etc. Thus, there is an absence of facts to show that the statement came within the exceptions of the statute authorizing oral statements.

For over seventy-five years, the law in Texas has been that a confession, inadmissible in the State's case in chief, is not admissible for the purpose of impeaching an accused as a witness in his own behalf. 1 Branch's Ann.P.C., 2d ed., § 96, p. 107. If not admissible as original evidence as a result of the statute, then it is not available for impeachment purposes even if the defendant has taken the witness stand. And, this is true even though the defendant, in taking the stand as a witness, is normally subject to the same rules as any other witness.

". . . He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant, *except where some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the present case, his failure to testify on a former trial or hearing, and the like. . . .*" (Emphasis added.) 1 Branch's Ann.P. C., 2d ed., § 168, p. 170.

Some difficulty has arisen since over the years the various statutes relating to confessions have been construed as not strictly confined to a technical confession but to cover any act or conduct in the nature of a confession, statement, or circumstance done or made by the defendant while in confinement or custody. Unless there has been a

---

1. The revised statute did not require that the *Miranda* warnings be given in case of oral confessions permitted under the statutory scheme, but the *Miranda* rule would so require such warnings and the necessary waiver and this court has so held.

Lee v. State, 428 S.W.2d 328 (Tex.Cr. App.1968); Fields v. State, 468 S.W.2d 71 (Tex.Cr.App.1971); Walker v. State, 470 S.W.2d 669 (Tex.Cr.App.1971); Herron v. State, 485 S.W.2d 558.

showing that the statute has been complied with, the State may not use such evidence as a criminative fact against the defendant. See generally 1 Branch's Ann.P.C., 2d ed., § 82, p. 79 and cases there cited.

The rule is explained in 62 Tex.Jur.2d Witnesses § 345, p. 390, as follows:

"An incriminating statement by the defendant, which may be introduced in evidence as a confession for want of compliance with the pertinent statute, may not be used either on his cross-examination in order to elicit an admission or denial that he made, relative to the occurrence, a prior statement inconsistent with his present testimony, or to contradict his denial. In other words, the mere fact that the statement is sought to be used to discredit the defendant by showing that on another occasion he gave a version of the facts in conflict with his testimony does not render the testimony admissible under the statute. Accordingly, in order to determine the use or admissibility of the statement for impeaching purposes the same test is applied as where it is sought to introduce the statement as a confession of guilt.

"On the other hand, a statement made by the defendant-witness at a former trial is not one that is governed by the statute, whether or not the contradictory statement was self-incriminating, and it may be used for impeaching purposes. Again, the statute does not apply to a prior statement by the defendant the tendency of which, if believed, would be to exculpate him, so that that statement may be used to impeach him if he testifies in conflict therewith."

Since the decision in Morales v. State, 36 Tex.Cr.R. 234, 36 S.W. 435 (1896), this court has consistently held that the confession of an accused which is inadmissible as original evidence for failure to comply with the applicable statute cannot be used for his impeachment. In *Morales*, the unwarned statement used for impeachment of the defendant was a complete acknowledgment of the crime charged.[2]

Bailey v. State, 40 Tex.Cr.R. 150, 49 S.W. 102 (1899), noted that *Morales* laid down the doctrine that it was incompetent to lay a predicate for confessions of guilt made by a defendant in jail not taken in accordance with the statute in order to contradict him by another witness. While in the *Morales* case the predicate laid was a direct confession on the part of the defendant of his guilt of the crime charged, the court, in *Bailey,* stated:

"  .  .  . While a rigid construction of the statute might confine the testimony strictly to technical confessions of guilt, yet we believe the terms of said statute have a broader signification, and that it was intended to protect a defendant while in jail, and to prevent the state going into the jail, and proving inculpatory or criminative facts against defendant by declarations or statements, he not having been warned, as the statute requires.  .  .  . " 49 S.W. at 103.

Bailey had testified and made out a case of "accident" and was contradicted and impeached by an unwarned verbal statement made while under arrest.

In Hernan v. State, 42 Tex.Cr.R. 464, 60 S.W. 766 (1901), a burglary case, the defendant testified to alibi (that he was in another part of Dallas at the time of the offense). On cross examination, over objection, he denied he had stated to the officer who arrested him that he could not be guilty of the offense as he had been in Hot Springs, Arkansas, on the date in

---

2. *Morales* would appear to overrule, where in conflict, Quintano v. State, 29 Tex. App. 401, 16 S.W. 258 (1891); Ferguson v. State, 31 Tex.Cr.R. 93, 19 S.W. 901 (1892); Bell v. State, 31 Tex.Cr.R. 276, 20 S.W. 549 (1892); Gonzales v. State, 31 Tex.Cr.R. 508, 21 S.W. 253 (1893); Rains v. State, 33 Tex.Cr.R. 294, 26 S.W. 398 (1894), and Phillips v. State, 35 Tex.Cr.R. 480, 34 S.W. 272 (1896).

question. Over objection, he was impeached by the arresting officer's testimony.

The court said:

" . . . It is insisted by appellant that though this testimony was, strictly speaking, not a confession, yet it was used against him as an inculpatory fact, in view of the defense of alibi set up by him, and was therefore, if not within the letter, within the spirit, of our statute, which inhibits the admission of the confessions of appellant while under arrest, unless he had been duly warned. . . ."

In reversing, the court agreed and cited *Bailey* with approval.

In Johnson v. State, 43 Tex.Cr.R. 476, 66 S.W. 845 (1902), the defendant, on cross examination, answered "No," when asked if he did not deny his name while under arrest. He was subsequently impeached. The court wrote:

" . . . We have held that this statute . . . gives perfect and complete immunity to defendant, and such testimony is not admissible, without warning, either for the purpose of impeachment or as original testimony. . . ."

In Whorton v. State, 69 Tex.Cr.R. 1, 152 S.W. 1082 (1913), the majority, noting the cases were in conflict, held that the confession statute had no application to "wholly exculpatory" statements, "even though the state should introduce other evidence showing such exculpatory statements are false." The testimony here that defendant stated, while under arrest, that he was in Fort Worth was introduced as original evidence and is strikingly similar to the impeachment evidence in Hernan v. State, supra.

Mason v. State, 74 Tex.Cr.R. 256, 168 S.W. 115 (1914), followed *Whorton* and overruled *Bailey*. Here again the impeachment of the defendant was not involved as he did not testify. Presiding Judge Davidson dissented in both *Whorton* and *Mason* pointing out that while the statements used were mainly exculpatory, they were utilized by the State as a basis for contradiction and thus would operate as incriminating evidence in the nature of a confession.

In Dover v. State, 81 Tex.Cr.R. 545, 197 S.W. 192 (1917) the question of what constitutes a confession was involved although the judgment was reversed on other grounds. In *Dover,* the judge who wrote the original opinion relied upon *Whorton* and *Mason* for the proposition that exculpatory statements were not prohibited from introduction by the confession statute, but the majority disagreed, stating:

"The purpose and effect of this statute (C.C.P., 810) is to prevent the prosecution from using against the accused the testimony of the officer having him under arrest to a verbal statement made by the accused which the state seeks to use to prove his guilt."

*Hernan,* among other cases, was cited with approval.

To the same effect is Lightfoot v. State, 117 Tex.Cr.R. 515, 35 S.W.2d 163, 165 (1931), where the court said:

"The purpose and effect of article 727, C.C.P., is to prevent the prosecution from using against the accused, by the testimony of the officer placing him under arrest, a verbal statement made by the accused which the state seeks to use in proving his guilt. Hext v. State, 104 Tex.Cr.R. 46, 282 S.W. 242; Donohoe v. State, 115 Tex.Cr.R. 17, 27 S.W.2d 215. . . ."

See also Williams v. State, 88 Tex.Cr.R. 87, 225 S.W. 177 (1920).

In Holmes v. State, 100 Tex.Cr.R. 635, 273 S.W. 849 (1925), in a situation very similar to the case at bar, a constable was permitted to testify as to a conversation he overheard between the defendant and one DeHart and his wife relating to having ar-

ranged bond and expecting the officers, and one Hall was permitted to testify as to a conversation between the defendant and his father in jail relative to pleading guilty. The defendant was under arrest on both occasions. The court reversed the murder conviction noting that the defendant had not been warned and that the statements had not been reduced to writing. In *Holmes,* the testimony was used as direct evidence and not for impeachment.

In Morman v. State, 127 Tex.Cr.R. 264, 75 S.W.2d 886 (1934), the accused, over objection, on cross examination denied he told the officers who arrested him in San Antonio that he was not in Houston when the car was stolen. The testimony of the officers impeached him. The court held that the effect of such testimony was to impeach the testimony given by the defendant, and that proof of a confession or of a statement of facts amounting to a confession, made while the accused is in custody would not be admissible to impeach him. Lightfoot v. State, supra, was cited with approval.

In Bussey v. State, 147 Tex.Cr.R. 447, 181 S.W.2d 94 (1944), a murder prosecution, a written statement of the accused was introduced. Testifying in his own behalf, the defendant related such confession was correct as far as it went but did not contain all he said on that occasion, etc., and some explanations were omitted.

The District Attorney then testified that subsequent to the confession the defendant was before a grand jury and that he acknowledged the written statement was correct and that he did not desire to add anything to it. The court reversed citing *Morales* and concluded that such evidence, not in accordance with the statute, could not be used for impeachment. Even though the evidence was later withdrawn and the jury instructed to disregard, this action was not sufficient to avoid the reversible error.

In Freeman v. State, 172 Tex.Cr.R. 144, 354 S.W.2d 141 (1962), a driving while intoxicated prosecution, the officer testified the accused was intoxicated when arrested. The accused denied intoxication and on cross examination also denied he had told the arresting officer he had been with his girl friend all night drinking "Ezra Brooks whiskey."

In rebuttal, the officer testified the accused told him that he (the accused) "had two or three drinks of Ezra Brooks bourbon whiskey the night before he was arrested."

Here again the court held that what was not admissible as original evidence was inadmissible for the purpose of impeachment. Numerous authorities were cited.

And, in Garner v. State, 464 S.W.2d 111 (Tex.Cr.App.1971), it is stated that

" . . . in construing our confession statutes this Court has excluded any act tantamount to or in the nature of a confession and to any unwarned statement even though it lacks the essential elements of a confession. . . . "

In Terry v. State, 420 S.W.2d 945 (Tex. Cr.App.1967), the court again held that exculpatory statements were not within the ambit of the confession statute, but noted that *Miranda* had swept away any distinction between inculpatory statements and statements alleged to be merely "exculpatory" but which were used for impeachment by the State to prove guilt by implication.

With this background and putting aside any continuing conflict in the cases as to whether exculpatory statements are included within the confession statute, we return to the instant case.

The oral statement used for impeachment was not an exculpatory one. It was not, on the other hand, one that was incriminating, standing alone. It was an acknowledgment of subordinate facts, colorless with reference to actual guilt. It was used, however, as a direct attack upon appellant's testimony and to show that such testimony was false. And, in this sense, it

was oral inculpatory testimony not within any of the exceptions pertaining to oral confessions or statements and, being by decisional law within the ambit of the statute, it was neither admissible as original evidence or for impeachment.

Does Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), compel a different result or serve as a basis for abandoning long-established precedent for the admission of oral statements made in custody absent interrogation or suggestion and without deception or deceit?[3]

In *Harris,* the Supreme Court held that a defendant who takes the stand may be impeached by a prior inconsistent confession even though the confession was inadmissible in the state's case in chief because of a failure to administer the warnings required by Miranda v. Arizona, supra, as long as the confession otherwise "satisfie[d] legal standards as to trustworthiness." Harris v. New York, 91 S.Ct. at 645. The Court reasoned that the purpose underlying exclusion of evidence tainted by *Miranda* error was to deter proscribed police conduct and that sufficient deterrence flowed from exclusion from the State's case in chief. This deterrence function, the Court concluded, should not be used to immunize or "shield" a defendant-witness from the "traditional truth-testing devices of the adversary process." 91 S.Ct. at 645–646.

Does the force of the *Harris* reasoning apply with equal vigor to the admission of oral confessions for impeachment which are otherwise inadmissible under Article 38.22, as is the State's contention? We believe not.

Such argument, advanced by the State, does have a superficial plausibility because the Supreme Court's strong language that the rules of exclusion should not be a shield for perjury appear to apply to the use of prior inconsistent oral confessions. Beyond these surface similarities, however, there are important differences which serve to distinguish the question presented in *Harris* from the narrow issue in this case.

*Harris* is bottomed on the premise that the mere failure to give *Miranda* warnings does not, of itself, in any way impair the reliability of the confession.[4] There being no question as to reliability and since the deterrence function was sufficiently served by exclusion from the State's case in chief, there was no justification for further exclusion of the confession. But this logic has validity only where the supposed theory of exclusion is based solely on extrinsic policy factors, such as regulation of police conduct, an assumption the Court adopted with respect to *Miranda* error. Where there are other reasons for the exclusion, such as the general unreliability of the evidence, *Harris* cannot be read to authorize such evidence for impeachment purposes because admission would then violate the condition the Supreme Court so carefully added—namely, that the evidence satisfies "legal standards as to trustworthiness."[5]

3. The State's explicit reliance on Harris v. New York, supra, as authority to modify the long-standing Texas rule presents a case of first impression for this court. Morales v. State, 466 S.W.2d 293 (Tex.Cr.App.1971), and Small v. State, 466 S.W.2d 281 (Tex.Cr.App.1971), are not dispositive or authoritative because in those cases the claim was on federal constitutional grounds and, in both cases, the confessions were in compliance with Article 38.22, supra.

4. The *Harris* reasoning on this point resolved much confusion which had existed

since *Miranda.* See the discussion in 2 Wright, Federal Criminal Procedure § 408 at 110 (1969); The Supreme Court, 1970 Term, 85 Harv.L.Rev. 38, 46 (1971); 49 Tex.L.Rev. 1119 (1971).

5. There has long been a general confusion as to the proper theory behind the exclusion of confessions. The early theory was that persons under arrest might falsely accuse themselves; accordingly, accused persons were warned or cautioned so as to offset this tendency of self-accusation. This theory explains the very early Texas statute, Oldham & White

This should suggest why the reasoning of *Harris* does not support the heavy burden the State has assigned to it. Even if *Harris* is correct[6] in holding that the mere absence of *Miranda* warnings and waiver does not affect the reliability of "trustworthiness" of a confession, it does not follow that proof of oral confessions in Texas state criminal proceedings not taken in compliance with the confession statute can be considered equally as "trustworthy." Indeed, this court cannot so hold in face of the statutory policy to the contrary. As earlier noted, the Legislature in Article 38.22, supra, has made the statutory determination that testimony surrounding oral confessions made while in custody or confinement is unreliable with certain statutory exceptions. As earlier noted, it has been said that this perceived evil arises because oral confessions are " ' . . . so liable to be misunderstood, so easily fabricated and so hard to be contradicted.' " Pierson v. State, supra, 168 S.W.2d at 259.

This statutory exclusion is not a constitutional requirement, either state or federal, and the wisdom of this legislative policy is, of course, not a matter for this court. To permit testimony as to an oral confession (not within any statutory exception) for impeachment would undermine the legislative determination expressed in Article 38.-22, supra. "Harris, of course, in no way obligates these (state) courts to overturn prior decisions as a matter of state crimi-

nal procedure." Note, 49 Tex.L.Rev. 1119, 1125 (1971).[7] The exclusion of oral confessions stands on a different footing than the *Miranda* error involved in *Harris*.

Therefore, we cannot agree with the State's contention despite the natural temptation to rush to embrace the *Harris* rationale. The beauty is only skin deep.

■ Although the *Harris* decision, sanctioning the use of otherwise inadmissible statements for impeachment purposes provided the trustworthiness of the evidence satisfies legal standards, would provide persuasion for changing Article 38.22, supra, until those changes are made that statute would control the use of prior statements for impeachment and it was error to permit the impeachment in this case. See United States v. Jordan, 20 U.S.C.M.A. 614, 44 C.M.R. 44 (Court of Military Appeals, 1971).

We need not decide whether the court erred in permitting the State to use appellant's silence while under arrest against him or to pass upon appellant's other grounds of error.

The judgment is reversed and cause remanded.

ROBERTS, Judge (dissenting).

I respectfully dissent from the majority in this cause on the following grounds: Article 38.22 of the Texas Code of Crimi-

---

Digest Art. 662 (1859). See Parker v. State, 91 Tex.Cr.R. 68, 238 S.W. 943, 948 (1922). See generally 1 McCormick, Evidence § 115 (1954). The modern consensus is that confessions are excluded primarily to protect constitutional rights, not because of any inherent unreliability. For an exhaustive discussion of this development, see 3 Wigmore, Evidence § 817–22 (Chadbourne Rev. 1970).

As the Supreme Court has recently said: "The use of coerced confessions, *whether true or false*, is forbidden because the method used to extract them offend constitutional principles." (Emphasis added.) Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 624, 30 L.Ed.2d 618 (1972).

6. The *Harris* opinion has been sharply criticized. See, e. g., Harris v. New York: Some Anxious Observations on the Candor and Logic of the Emerging Nixon Majority, Dershowitz and Ely, 80 Yale L.J. 1198 (1971); The Supreme Court, 1970 Term, 85 Harv.L.Rev. 38; Note, 49 Tex.L.Rev. 1119 (1971); Admitting the Inadmissible: The Wounding of Miranda, Meachum, 23 Baylor L.Rev. 639 (1971).

7. This same article also expressed the thought that *Harris* should have no effect on the Texas law controlling the admissibility of pre-trial statements used for impeachment. See footnote 33 thereof at p. 1125.

nal Procedure does prohibit oral confessions except in certain stated circumstances. The testimony used in this case as set out in the majority opinion cannot and does not constitute "a confession" or even an inculpatory statement in regard to the crime alleged.

However, this Court, over the many years as presented by the majority opinion, has followed a primrose path in regard to these matters and has declared that any statement made while under arrest which was not in writing which did not lead to the fruits of the crime or to the weapon used to commit the crime was prohibited under said Article.

Fully realizing that the Legislature of Texas has had notice that this Court has so interpreted this statute over many years and has not seen fit to make a change in the same, I nevertheless dissent because calling a statement a confession when, in truth and in fact, it is simply a statement and not a confession to any crime is not reasonable nor rational.

I realize the hesitancy of the majority to overrule some 70 to 80 years of law in this regard, but feel that we must realistically approach the problem.[1] Further, this Court should let a jury decide whether or not perjury has been committed. The ruling by the majority does not let the jury have that function. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 1 (1971), decided this in regard to Miranda warnings. It is equally compelling that we do the same.

Therefore, I would affirm the judgment in said cause and hold that the court did not err in admitting the statement made in a conversation between husband and wife while under arrest which did not amount to a confession.

ODOM, J., joins in this opinion.

[1]. Where this Court recognizes a genuine need for change, the overruling of a long line of cases becomes only a secondary consideration. See Olson v. State, 484 S.W.2d 756 (Tex.Cr.App.1972).