**Dennis McBRIDE and Verle Byars, Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 47674.

Court of Criminal Appeals of Texas.

March 20, 1974.

Rehearing Denied April 3, 1974.

Robinson & Wilson, Abilene, for appellants.

Ed Paynter, Dist. Atty., Patricia A. Elliott, Asst. Dist. Atty., Abilene, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

The appeals are from convictions for the offenses of conspiracy to commit theft. After the jury returned a verdict of guilty, punishment was assessed by the court at two years, probated. Appellants contend that the trial court erred in admitting into evidence, over objections, conversations between the arresting officers and one of the appellants. After reviewing the record, we agree.

The record reflects that appellants McBride and Byars worked for the Unitab Company in Abilene for a number of years. Both appellants submitted their resignations to Jack Williams (the President of Unitab) on May 30, 1972.

The State's theory throughout the entire case was that the appellants entered into a positive agreement between themselves to form a new company in Wichita, Kansas, whose operations were identical to Unitab. Byars is an accountant whose clients used Unitab for purposes of doing their data processing work.

Shortly after appellants' resignations, Byars' clients decided to take their business elsewhere. This was done on the advice of Byars. Thereafter, McBride's newly formed company in Wichita, Air Capital Computing, acquired these clients' business.

On July 15, 1972, McBride telephoned one Arnold Wagner, who was employed by Unitab as a computer operator. Wagner testified that during the phone call McBride asked him if he would do him a favor by reproducing the program decks in question; that McBride stated that he would pay him to do it; and that he should deliver them to Byars around noon on July 17th in the parking lot of Horne's Restaurant. On the following Monday (July 17), Wagner told Williams and Gafford, the Vice-President of Unitab, about McBride's call, after which they all went to the District Attorney's Office. From there, Gafford went back to Unitab and made copies of the programs in question. After Gafford had come back, Wagner went to Horne's parking lot, whereupon he found Byars waiting for him. Wagner then got into Byars' car, at which time Byars asked him if "he had brought the things with him." Wagner replied, "yes," went back to his car, and gave them to him. Byars then gave him $40.00 and stated that if he wanted more he could write a check. Wagner then gave a "prearranged secret signal" to police officers, who promptly arrested Byars.

Sergeant Harold Emerson of the Abilene Police Department testified that he went to the District Attorney's Office with Texas Ranger Sid Merchant at approximately 11:40 a. m. on the day in question; that Gafford came to the officer with a box of IBM cards, which he gave to Wagner; that Wagner took the cards and went to Horne's Restaurant to meet Byars; that he and Merchant also went to the parking lot of Horne's Restaurant, whereupon they saw Byars sitting in his automobile; that they saw Wagner take the box of cards to Byars' car; and that after Wagner had given him the prearranged signal they both walked up to his car. Merchant then read appellant Byars his "rights." [1] Emerson then asked Byars what he was doing, to which he replied that he was "buying some IBM cards from this boy" and that he had given him $40.00 for the cards. [2] Byars was then taken to the police station.

Byars, testifying in his own behalf, stated that McBride asked him to pick up an Easy-Code AAACLM deck from Wagner at Horne's Restaurant on July 17; that he had no intention to steal the cards; and that there was never any conspiracy or positive agreement between him and McBride to steal anything from Williams. Upon cross-examination of Byars, the following was brought out in reference to his conversations with Merchant while under arrest and at the police station:

"Q. Okay, Do you recall telling him (Ranger Merchant) also that you had also obtained some accounts from Abilene Printing and Stationery?

"A. I don't know that I told him about that; no, sir.

"MR. WILSON: Your Honor, at this time, for the purpose of the record, we object to any questioning, or testimony along this line for the purposes of impeachment, or for any other purposes, for the reason that Mr. Byars was under arrest at the time and any statements made by Mr. Byars after that time while he was under arrest are required by law to be in writing and sworn to before they can become admissible into evidence, must adhere to the law that the statute requires. These have not met them, and for that reason, and that reason alone, we object to any testimony or questioning regarding this matter.

"THE COURT: All right. On that basis alone, I will overrule your objection.

"MR. WILSON: Note our exception.

"Q. Now, Mr. Byars, going back and just for purposes of refreshing us as to where we were, I believe you are now talking to Mr. Sid Merchant, a Texas ranger at the Abilene Police Department. We went over your stay of your previous employment with Unitab and your statement that you quit for personal reasons.

"Then, you were last being questioned with regard to whose cards were in that box. Do you recall that being brought up?

"A. No, sir, I do not.

"Q. Now, do you recall telling Mr. Merchant, at that time, that you, meaning Verle Byars, were entitled to the contents of that box and subject Williams, or Mr. Jack Wil-

---

1. Exactly what rights were read to Byars do not appear from a reading of the record. However, Byars testified that Sergeant Emerson read warnings off of a card which he would, from watching television, say were his legal rights.

2. After Sergeant Emerson had testified that Byars had said "he had given him $40.00 for

the cards" and that "he didn't know if he (Wagner) had authority to sell the cards," appellant's counsel objected on the basis that appellant was under arrest. However, no ruling on his objection was secured, as the witness was immediately passed to the defense.

liams had refused to turn them over to you, and this is the reason that you had done this?

"A.   Not—I don't recall making that statement; no sir.

"Q.   Well, do you deny making that statement to Mr. Sid Merchant?

"MR. ROBINSON: Now, Your Honor, again, we would like to impose objections here to this line of testimony and questioning on the basis that none of this is in writing. It is inadmissible for any purpose whatsoever.

"THE COURT: I overrule your objection.

"MR. ROBINSON: We further object on the basis that it is an attempt of impeachment, and no statements to the contrary are in evidence as to whether he admits or denies a statement. These statements are an improper attempt to impeach him.

"THE COURT: I overrule your objection."

After Byars had testified, the State then called Merchant to the stand. Merchant testified:

"A.   Yes, sir, we went to an office of the Detective Division in the Police Department.

"Q.   All right. Did you have a conversation with him at that time?

"A.   Yes, sir.

"Q.   Did you have any conversations with him relative to his employment?

"A.   Yes, sir, he stated that he had —

"MR. ROBINSON: Your Honor, we again—excuse me, Mr. Merchant. We object to any statement made by the Defendant. It certainly shows that he was under arrest at the time at the Police Station and same is not being in writing.

"MR. PAYNTER: Well, Your Honor, we offer them for purposes of showing the inconsistencies with the testimony here at trial and the statements made to Mr. Merchant at the time there at the Police Department.

"THE COURT: All right. I will overrule your objection.

"  . . .

"Q.   Did he make any comments with regard to the cards that had been placed in this brown box and the Abilene Printing and Stationery Company account?

"A.   He stated that those cards that some of them belonged to his customers and some of them belonged to Abilene Printing and Stationery Company and they needed those cards in their business.

"Q.   Did he make any reference with regard to trying to recover those cards?

"MR. ROBINSON: Your Honor, again, we object to the question as to relating to a conversation had with this Defendant. The same is not on the basis of any impeachment of this Defendant; that the same purports to be a conversation had with an officer after he was under arrest. The same is not admissible for any purposes whatsoever as not being in writing after he is duly warned.

"THE COURT: I will overrule your objection.

"MR. ROBINSON: Note our exception.

"Q.   Now, did he make any reference with regard to his attempting to recover these cards?

"A.   Are you talking about previous to this?

"Q.   Yes.

"A.   Yes, sir. He said that he had contacted Mr. Williams on numerous

occasions trying to get these cards and other paroperty of their customers. He turned over some of and other property of their cus.turn these cards over to them.

"Q. Now, did you have any conversation with regard to Arnold Wagner with the Defendant, Byars?

"MR. ROBINSON: We object to any conversation had with this Defendant after he is under arrest on the basis that the same is not in writing.

"THE COURT: I will overrule your objection."

Merchant's testimony was used to contradict and impeach appellant and, in a sense, corroborate the State's theory of the case. All of appellant's objections to statements that he made under arrest, with the exception of one, were overruled. The testimony was a direct attack upon his testimony and was criminative, especially in light of the State's heavy reliance on circumstantial evidence to prove a conspiracy in this extremely complex case.

The statements in question, although not a confession in the strict sense, were nevertheless not in compliance with the requirements of Article 38.22, Vernon's Ann.C.C.P. The statements were oral, inculpatory, and were made in response to questions of the arresting officers. They did not lead to the fruits of the crime because the police had previously recovered the cards at the scene of arrest. Therefore, the statements were neither admissible as original evidence nor for impeachment purposes. See Hugley v. State, Tex. Cr.App., 505 S.W.2d 914 (1974); Martinez v. State, Tex.Cr.App., 498 S.W.2d 938; Butler v. State, Tex.Cr.App., 493 S.W.2d 190; Whiddon v. State, Tex.Cr.App., 492 S.W.2d 566; Harrison v. State, Tex.Cr. App., 491 S.W.2d 920.

While the error in question was in the admission of the statements against Byars, we cannot say beyond a reasonable doubt that the error was harmless as to McBride.

For the reasons stated, the judgments are reversed and the cause remanded.

Opinion approved by the court.

ROBERTS, Judge (dissenting).

I respectfully dissent from the majority's holding. As the majority recognize, these statements did not amount to a confession, and, on that basis, I reassert my position as stated in the dissenting opinion in Butler v. State, 493 S.W.2d 190 (Tex.Cr.App. 1973).

ODOM, J., joins in this dissent.